## S07A1314. GREEN v. THE STATE.
### (653 SE2d 23)

THOMPSON, Justice.

Montrell Green was convicted of malice murder, rape, and other crimes arising from the stabbing death of Rashiah Morris.[1] On appeal, Green asserts, inter alia, that the trial court improperly allowed his custodial statement to be admitted in evidence, and that he was denied effective assistance of trial counsel. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence established that Montrell Green, then age 16, called 911 and notified the responding officer of the following: Green had been walking

---

[1] The crimes were committed on May 16, 2004. On June 29, 2005 Green was charged in an 11-count indictment with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault, rape, aggravated sodomy (two counts), necrophilia (three counts), burglary, and possession of a knife during the commission of a felony. Trial commenced on September 12, 2005. On September 15, 2005, a jury acquitted Green of necrophilia, but found him guilty as charged of the remaining offenses. A sentencing order was filed on September 19, 2005. The felony murder and aggravated assault counts merged into the malice murder count, and Green was sentenced to three consecutive life sentences plus a total of 25 consecutive years. A motion for new trial was filed on September 16, 2005, amended on October 24, 2006, and denied on March 23, 2007. A notice of appeal was filed on April 10, 2007. The case was docketed in this Court on May 16, 2007, and was submitted for a decision on briefs on July 9, 2007.

through his apartment complex when he heard the words "help me, help me" coming from a friend's apartment; he then entered that apartment through a window and observed a man attacking his friend with a knife; Green confronted the attacker, a fight ensued and the attacker escaped through the front door. Green directed the officers to the apartment where the attack took place. They found the female victim on the floor bleeding profusely; she died minutes later from her wounds. Forensic evidence established that the victim had been stabbed 74 times, raped, and sodomized.

Green willingly went with the officers to police headquarters where he was questioned as a witness. At the beginning of the interview, the officers established that Green was 16 years old and they advised him that he was entitled to have a parent present. He declined the offer, stating, "No, this is cool. Everything is cool." A second offer was also declined. Inconsistencies appeared in his account of the events, and Green subsequently admitted to stabbing the victim. The interview was halted and Green was advised of his *Miranda* rights from a juvenile rights form, which included the right to have a parent or guardian present. He stated that he understood his rights and asked if he could phone his mother. At that point, he was placed under arrest and taken from the interview room. He was permitted to contact his mother after he was taken to the jail.

Green ultimately led the officers to a grassy area behind the victim's apartment building where he had discarded the murder weapon. A warrant was issued to obtain buccal swabs from Green for DNA testing. His DNA was identified in vaginal, rectal, and oral swabs collected from the victim.

1. The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Green was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. After conducting a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the trial court admitted Green's custodial statement. Green submits that the statement should have been suppressed because the State did not meet its burden of showing that he knowingly and voluntarily waived his constitutional rights under the nine-part analysis of *Riley v. State*, 237 Ga. 124 (226 SE2d 922) (1976). This court, in *Riley*, held that "the question of a voluntary and knowing waiver [by a juvenile] depends on the totality of the circumstances and the state has a heavy burden in showing that the juvenile did understand and waive his rights." Id. at 128. The *Riley* factors are as follows:

> [T]he age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge

and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether the accused refused to voluntarily give statements on prior occasions; and whether the accused repudiated an extrajudicial statement at a later date.

*Henry v. State*, 264 Ga. 861, 862 (2) (452 SE2d 505) (1995).

Applying these factors, we find that the crimes occurred when Green was one month shy of his seventeenth birthday;[2] he was knowledgeable about the substance of the crimes as he notified the police that the attack had taken place and he led them to the scene; *Miranda* rights were administered; although Green was informed that he could consult with a parent, he did not ask to contact his mother during the interview; no charges were preferred until the end of the 40-minute interview. Under the totality of the circumstances, we agree with the trial court that there was a knowing and voluntary waiver of the right to remain silent.

Alternatively, Green asserts that the trial court's order is silent as to whether the *Riley* factors were considered, and that therefore, the appellate record is incomplete. The transcript of the *Jackson v. Denno* hearing shows that defense counsel vigorously argued the applicability of *Riley* and each of its factors as applied to Green's confession. In addition, the testimony of the interrogating officer adduced at the hearing was sufficient to support the court's conclusion that Green knowingly and voluntarily waived his right to counsel and that his statements were properly admitted at trial under the *Riley* test. Compare *In the Interest of L. E. J.*, 185 Ga. App. 743, 745 (1) (365 SE2d 537) (1988) (where the trial evidence is incomplete, a post-trial hearing in a juvenile proceeding may show the totality of the circumstances and the admissibility or inadmissibility of a confession).

Green also claims that the investigating officer violated OCGA § 15-11-47 (a) by failing to give notice of the juvenile's detention to a parent or guardian.[3] The undisputed evidence established that Green

---

[2] Although we are unable to discern from the record the actual level of education Green attained in school, he testified at trial: "when I was in high school I took biology, took chemistry, and I took physics."

[3] OCGA § 15-11-47 (a) provides in pertinent part: "A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall: (1) Forthwith release without bond the child to the child's parents, guardian, or other custodian upon their promise to bring the child before the court when requested by the court."

was informed of the right to have a parent present during the interview, but that he did not invoke that right. The officer testified that Green "did not request [to have a parent present]. He just requested that at some point during the evening that he be allowed to contact a parent, didn't want him present, didn't need him present, just wanted to give him a call." The recorded interview supports that testimony. Even assuming that OCGA § 15-11-47 (a) was violated by the failure to contact a parent or guardian, there is no automatic exclusion of a juvenile's statement if the parent is not separately advised; instead, the question of waiver must be analyzed under the *Riley* test. *Riley*, supra at 128. See also *Hanifa v. State*, 269 Ga. 797 (3) (505 SE2d 731) (1998) (a violation of the juvenile code does not per se render the juvenile's statement inadmissible). Under the circumstances, we find no error in allowing Green's statement into evidence.

3. Green submits that the trial court erroneously admitted a photograph of the victim taken after the body had been altered by medical personnel.

Emergency medical responders arrived at the victim's apartment within minutes of the discovery of the crime. The photograph was taken at the scene after the responders tried to revive the victim. The body was altered only insofar as it had been rolled over to attach leads to detect a pulse, and the mouth was opened in order to administer CPR. Citing *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983), and its progeny, Green asserts that the photographs were misleading and prejudicial, falsely creating the impression that oral sodomy and necrophilia by oral sodomy had occurred as alleged in the indictment.

*Brown* prohibits the introduction of a "photograph which depicts the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist . . . unless necessary to show some material fact which becomes apparent only because of the autopsy." Id. at 867 (5). The photograph in issue here is obviously pre-autopsy. It shows minor alterations to the body at the scene for the purposes of medical assessment and to administer CPR. It also shows that the victim survived the attack for a short period of time and was most likely the reason that Green was acquitted of necrophilia. Nor was the evidence so prejudicial as to be inadmissible with respect to the charge of oral sodomy since that crime was decisively proven by the DNA evidence. It follows that the trial court did not err in admitting the photograph into evidence.

4. It is alleged that trial counsel was ineffective because he failed to object to the admission of one photograph of the clothed body positioned on an examination table prior to autopsy. Trial counsel testified at the hearing on the motion for new trial that there seemed

to be a relevant purpose for the photo and that he was less concerned about this photo than the photos taken at the crime scene.[4]

> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficiency so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

*Patel v. State*, 279 Ga. 750, 751 (620 SE2d 343) (2005), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

"Pre-autopsy photographs are generally admissible to show the nature and extent of a victim's wounds. *Johnson v. State*, 266 Ga. 775, 778 (8) (470 SE2d 637) (1996); *Williams v. State*, 265 Ga. 681, 683 (5) (461 SE2d 530) (1995)." *Russell v. State*, 267 Ga. 865, 867 (3) (485 SE2d 717) (1997). The photograph in issue was relevant and admissible for that purpose as well as to show that the body had been examined in preparation for autopsy. Green has not established that counsel's performance was deficient or that the result of the trial would have been different had counsel objected to the admissibility of the evidence.

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., who concurs in Divisions 1, 2, 3 and the judgment.*

DECIDED NOVEMBER 5, 2007.

*Harrison & Harrison, Samuel H. Harrison*, for appellant.

*Daniel J. Porter, District Attorney, Richard A. Vandever, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.

---

[4] Green concedes that counsel "properly and vigorously" argued against the admissibility of other similar photographs.