301 Ga. 707
FINAL COPY

S17A0768. JOHNSON v. THE STATE.

GRANT, Justice.

An Effingham County jury found appellant Kevin Johnson guilty on all eight counts of an indictment filed in connection with the death of Melanie Haynes, a two-year-old child.[1] Johnson contends that the evidence at trial was insufficient to support his murder conviction and that the trial court erroneously admitted a custodial statement he made without having been advised of his *Miranda*[2] rights. Because the evidence was plainly sufficient to support the

---

[1] The crimes occurred on February 8 and 9, 2010. On June 6, 2011, an Effingham County grand jury indicted Johnson for malice murder, among other crimes. At a trial held February 15-17, 2012, the jury found Johnson guilty of all charges. On March 1, 2012, the trial court sentenced Johnson to serve life in prison without the possibility of parole. On March 8, 2012, Johnson filed a motion for new trial, which was amended on November 12, 2015. Following a hearing, the trial court denied Johnson's motion on July 21, 2016. Johnson filed a timely notice of appeal, and the case was docketed in this Court to the April 2017 term and thereafter was submitted for decision on the briefs.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

jury's malice murder verdict and because the challenged statement did not require *Miranda* warnings, we affirm.

I.

Viewed in the light most favorable to the jury's verdict, the evidence at trial shows that on February 8 and 9, 2010, Johnson was babysitting Melanie, the two-year-old daughter of his girlfriend Angela Rocha. Johnson lived with Rocha at the time and, on certain occasions, he watched Melanie while Rocha was at work. On February 8, 2010, Johnson called Rocha and told her that Melanie had fallen and had a bruise on her head. Rocha testified that her child appeared normal when she returned from work that evening and before she left for work the next morning. The next day, Johnson again called Rocha while she was at work. This time, he reported that Melanie was vomiting. Johnson called Rocha later that same day and told her Melanie was having trouble breathing. On Rocha's instruction, Johnson called 911. When the ambulance arrived, an emergency medical technician found Melanie not breathing and without a heart rate. She was cold, pale, and bluish. There were no signs or smells of vomit in the house or on Melanie's breath or body. Although first responders attempted

to revive Melanie, she never regained consciousness and died at the hospital as a result of her injuries.

While the ambulance took Melanie to the hospital Johnson spoke to law enforcement at the house, and they conducted a search with his consent. He told one of the responding officers that Melanie had fallen off the couch the day before. Johnson did not mention any other falls or injuries to the officers. When Rocha arrived, the ambulance had already left. At the hospital, doctors told Rocha that Melanie was not likely to regain consciousness and that the child's injuries were not accidental. Rocha testified that Johnson initially told her that Melanie had fallen off the couch, but did not mention that Melanie had also fallen in the bathtub until later that day.

The next day, at the request of law enforcement, Johnson agreed to come to the Effingham County Sheriff's Office for an interview. Officers told Johnson that they were conducting an investigation into Melanie's death but that he was "free to leave" if he wanted. During this interview, Johnson told investigators that Melanie had hit her head by falling off the sofa twice and falling in the bathtub. When Johnson was arrested two days later, an

3

investigator read his *Miranda* rights and Johnson executed a waiver of constitutional rights form. After his arrest, Johnson again told investigators that Melanie had fallen off the couch twice and had fallen in the bathtub. But this time, Johnson told investigators Melanie hit the right side of her head in the bathtub. Previously, Johnson had indicated Melanie hit the left side of her head.

While Johnson was still in custody, roughly two weeks after his arrest, he requested to speak to Investigator Michelle Buchmeyer from the Effingham County Sheriff's Office. Investigator Buchmeyer arrived as requested, and was accompanied by Investigator Jeremy Scott. Investigator Buchmeyer testified that Johnson initially asked her for his Social Security card, and went on to tell her that the police had "ruined his social life." When asked how his social life had been ruined, Johnson did not answer the question but instead stated, somewhat incongruously, that he was swinging Melanie around when she accidentally hit her head hard on an open dresser drawer. Johnson said he had not mentioned the incident with the dresser before because he did not think it was important. Investigator Buchmeyer testified that no threats were made against Johnson. Johnson, on the other hand, testified that his statement about swinging Melanie around was a "complete lie," and that he told the lie because

he felt threatened and intimidated by Investigator Jeremy Scott. According to Johnson, Investigator Scott had a reputation "for beating people." Johnson did not testify, however, that Investigator Scott actually threatened him.

In addition to his various statements to law enforcement, Johnson wrote a letter to Rocha about Melanie's death. In the part of the letter that Johnson read to the jury, he wrote, "I think I know what happened to Melanie," but that it was not "intelligent to write it in this paper." By the time of his trial testimony, Johnson's story was that he assumed that Melanie jumped off a dresser into a tub of balls, and that he had told Rocha about his assumption after writing the letter.

At trial, the first responders who helped Melanie testified that her face was bruised. And when Rocha saw Melanie at the hospital on February 10, she had more bruises on her face than she did when Rocha left for work that morning. The State called two expert witnesses, who each testified that Johnson's explanations did not sufficiently account for the severity of Melanie's injuries.[3]

---

[3] According to expert witness testimony, Melanie's injuries were consistent with multiple blunt force trauma or a car accident. In addition to the presence of several bruises, Melanie's skull was fractured and she had injuries consistent with extreme acceleration and deceleration forces, commonly referred to as

Instead, the experts stated that Melanie's death was the result of intentionally inflicted traumatic brain injury, and could not have been caused by an accident or a simple fall. One expert testified that "perhaps one or two" of Melanie's injuries could have been caused by Melanie striking her head on the corner of a dresser while spinning around, but that the totality of the injuries were not consistent with that scenario.

## II.

Contrary to Johnson's contention, the evidence was plainly sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Johnson was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

Here, Johnson and the child were the only ones in the house after Rocha left, and Rocha testified that the child appeared normal when she left for work. Expert testimony established that Melanie's injuries were intentionally inflicted and not the result of a fall or accident. Throughout the investigation, Johnson offered explanations for the child's injuries, but none of these explanations were consistent with the evidence. The jury thus had sufficient evidence to find

"shaken baby syndrome." Melanie also had a fractured eye socket and retinal hemorrhaging.

Johnson guilty of malice murder beyond a reasonable doubt.  See, e.g., *Zamora v. State*, 291 Ga. 512, 512-514 (1), (2) (731 SE2d 658) (2012) (holding that the evidence was sufficient for a rational jury to convict the defendant of malice murder where a child was left alone with the defendant, the child died, and an autopsy revealed the injuries sustained by the child could not have occurred from the normal activities of a toddler).

## III.

Johnson's next contention is that the trial court erred by admitting his statement that he was swinging Melanie around when she hit her head on the dresser.  Specifically, Johnson claims that during the time he made that statement he was in custody, but that he had not been re-advised regarding his *Miranda* rights.  Johnson also argues that Investigator Scott threatened him with violence and that his statement was therefore coerced.  Neither contention holds weight.

The trial court considered and rejected Johnson's *Miranda* claims at his *Jackson-Denno* hearing.  And "[u]nless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the

7

defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal."

*Sosniak v. State*, 287 Ga. 279, 279-280 (1) (695 SE2d 604) (2010) (citation and

punctuation omitted); see *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12

LE2d 908) (1964). *Miranda* warnings must be administered when two factors

are met: the accused is in custody, and is subjected to interrogation or its

functional equivalent. See *Rhode Island v. Innis*, 446 U. S. 291, 300-301 (100

SCt 1682, 64 LE2d 297) (1980). Interrogation, for *Miranda* purposes, occurs

when there is "express questioning and words and actions that officers should

know are reasonably likely to elicit an incriminating response from the subject."

See *Waters v. State*, 281 Ga. 119, 122 (4) (636 SE2d 538) (2006). Particularly

relevant here, a spontaneous and unsolicited statement is admissible without

*Miranda* warnings if it was not elicited by questioning or made in response to

any form of custodial interrogation. See *Smith v. State*, 264 Ga. 857, 859 (3)

(452 SE2d 494) (1995) (holding that no *Miranda* violation occurred where the

defendant, without receiving *Miranda* warnings, voluntarily and spontaneously

made incriminating statements not elicited by law enforcement questioning).

Johnson's *Miranda* claim thus fails on several fronts. First, Johnson

himself initiated the discussion by requesting to meet with Investigator

Buchmeyer. And Johnson's statement that he was swinging Melanie when she hit her head was spontaneous, unsolicited, and not prompted by the investigators' express questioning of him. *Smith*, 264 Ga. at 859. In fact, the investigators made no reference at all to any information regarding the case; their question regarding how they had ruined Johnson's social life was a direct response to Johnson's unsolicited statement that they had done so. Johnson nevertheless freely offered the statement that he had been swinging Melanie around when she hit her head. Because his statement was spontaneous and unsolicited, Johnson's *Miranda* claim fails.

Nor can his coercion claim succeed. The record does not support Johnson's claims that he was threatened. Even Johnson himself testified only that he had *heard* that Investigator Scott had beaten an inmate — not that Scott had actually threatened Johnson with violence. The trial court was plainly authorized to conclude that Johnson's *Miranda* rights were not violated and that the statements he made to Investigator Buchmeyer were admissible.

Judgment affirmed. All the Justices concur.

Decided August 14, 2017.

Murder. Effingham Superior Court. Before Judge Turner.

Trotter Jones, James S.V. Weston, for appellant.

Richard A. Mallard, District Attorney, Brian A. Deal, Keith A. McIntyre, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.