307 Ga. 147
FINAL COPY

S19A0957.  CAUSEY v. THE STATE.

BENHAM, Justice.

Appellant Frank Don Causey was convicted of malice murder and sentenced to life in prison without parole in relation to the fatal strangulation and drowning of Lydia Ivanditti.[1]  We affirm his conviction.

1.  Causey alleges the evidence was insufficient to convict him because there was no evidence placing him at Ivanditti's home at the time of her death.  In a light most favorable to upholding the

---

[1] The crime occurred on or about December 2, 2016.  On March 20, 2017, a Putnam County grand jury returned an indictment charging Causey with malice murder, felony murder, and aggravated assault.  The trial took place before a jury between November 6 and 15, 2017.  The jury returned verdicts of guilty on all charges, and the trial court sentenced Causey to serve life in prison without parole for malice murder.  The conviction for felony murder was vacated as a matter of law, and the charge of aggravated assault merged into malice murder for sentencing purposes.  Causey moved for a new trial on November 20, 2017, and amended the motion on October 8, 2018.  On October 9, 2018, the trial court held a hearing on the motion as amended, and denied the motion by order on January 22, 2019.  Causey filed a timely notice of appeal on February 13, 2019.  Upon receipt of the record, the case was docketed to the April 2019 term of this Court and submitted for a decision on the briefs.

jury's verdict of guilty, the evidence at trial was as follows. On December 1, 2016, Ivanditti left her mother's house around 8:30 p.m. When Ivanditti's mother and daughter had not heard from her by the afternoon of December 2, Ivanditti's mother went to her house to check on her. The mother discovered Ivanditti deceased in her bathtub and called police. Ivanditti had been deceased for at least four to six hours prior to discovery because her body was in full rigor mortis. Ivanditti had bruising on her neck and on her forehead. The medical examiner testified that Ivanditti died from manual strangulation and drowning.

Inside the bathtub with Ivanditti's body was an unplugged foot massager with some blood on it.[2] Next to the bathtub was a broken glass pipe with traces of marijuana in it, a broken cell phone, and a cell phone case. Authorities identified the blood on the battery of the broken cell phone and the cell phone screen protector as belonging to Causey. Some blood-spotted bath towels recovered

---

[2] The test of the DNA from the blood on the foot massager was inconclusive.

from the scene also tested positive for Causey's DNA. The police believed items in the bathroom had been arranged to make the scene look like an accident, in particular the placement of the unplugged foot massager on top of Ivanditti's foot and the placement of the components of the broken cell phone.

Causey had once lived with Ivanditti, who was known to allow various people to live in a downstairs bedroom inside her Putnam County house. A forensic review of Ivanditti's phone records and Causey's phone records revealed that Causey, using a method to block the identity of his phone number, contacted Ivanditti several times on the night she was killed. Police confirmed that Causey sometimes drove his partner's blue Dodge Durango. The Durango was seen at Ivanditti's house around 8:00 p.m. on December 1. That vehicle was also recorded by a nearby hardware store's video surveillance camera. The recording showed the vehicle leaving from the direction of Ivanditti's house around midnight on December 2. Ivanditti's neighbor testified that, at about 2:00 a.m. on December 2, she saw a person, whom she believed to be male, walk out of

3

Ivanditti's house and over to a maroon SUV that was parked on Ivanditti's property. The evidence at trial showed that Causey owned a maroon SUV, which he had left at Ivanditti's house when he had previously lived there.

After his arrest, Causey made inculpatory statements to police, admitting that he saw Ivanditti on the night of her death, became angry with her, "broke out in [a] rage," and grabbed her by the neck with his hands for 15 to 20 seconds. Causey said after he let go of her neck, Ivanditti fell into the tub and was unresponsive. In addition to these inculpatory statements, the State introduced evidence pursuant to OCGA § 24-4-404 (b), showing that Causey had fought with past girlfriends, and, during those altercations, he choked the women and either disabled their cell phones or took their cell phones away from them.

The evidence described above was sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that Causey was guilty of the crime for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

4

2. Causey alleges the trial court erred when it admitted custodial statements he made after he allegedly invoked his right to remain silent.

> Police must scrupulously honor a suspect's right to remain silent if the person clearly and unambiguously states that he wants to end a custodial interrogation. *Berghuis v. Thompkins*, 560 U. S. 370, 381-382 (130 SCt 2250, 176 LE2d 1098) (2010); *Perez v. State*, 283 Ga. 196, 197 (657 SE2d 846) (2008). "But if a defendant equivocates in asserting the right, a police officer is under no obligation to clarify or to stop questioning." *Ridley v. State*, 290 Ga. 798, 802 (4) (725 SE2d 223) (2012) (citation omitted).

*Brown v. State*, 304 Ga. 435 (2) (b) (819 SE2d 14) (2018). The record in this case does not support Causey's assertion that he clearly and unambiguously invoked his right to remain silent.

Causey submitted to two custodial interviews. The first custodial interview took place on December 20, 2016, the day of Causey's arrest, at the Eatonton Police Department (EPD) with GBI Special Agent David Peebles, who was the lead investigator on the case, EPD Investigator Lenwood Pickens, and, toward the end of the interview, GBI Special Agent in Charge Joe Wooten. The second

5

custodial interview, which was partially video-recorded and fully audio-recorded,[3] took place on December 21 at the Putnam County Sheriff's office with GBI Special Agents Michael Maybin and Peebles.

Upon holding a *Jackson-Denno*[4] hearing and reviewing the recordings of the custodial interviews, the trial court concluded that Causey did not unequivocally invoke his right to remain silent during the first custodial interview. Our review of the record supports this conclusion. Immediately prior to commencing the first custodial interview, authorities read Causey the *Miranda*[5] warnings, and he agreed to talk without an attorney present. Throughout the first custodial interview, Causey denied having anything to do with Ivanditti's murder. He also questioned investigators about what evidence connected him to the crime. Just

[3] The audio recording of the second custodial interview was played for the jury at trial.

[4] See *Jackson v. Denno*, 378 U. S. 368 (III) (84 SCt 1774, 12 LE2d 908) (1964).

[5] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

6

under an hour into the interview, after being admonished several times that he could not go home because he was under arrest, but also reminded that he was not required to talk to police, Causey told agents to put the handcuffs on and take him to jail. At that point, Agent Peebles and Investigator Pickens stepped out of the room. Agent Wooten came in to tell Causey that they were getting ready to book him and take him to jail. Agent Wooten advised Causey that the authorities would only talk to him if he re-initiated the interview. Causey asked for Agent Wooten's business card and requested a cigarette. Agent Wooten advised Causey that he could smoke his cigarette and take five minutes to decide if he was finished talking to police. Rather than taking five minutes to think, Causey asked Agent Wooten to sit down. Once Agent Wooten sat down, Causey started talking again and continued to ask more questions about the evidence against him. Agent Peebles re-entered the room as Causey continued speaking. At the end of the interview, Causey told Agent Peebles he would talk to him "tomorrow at noon."

Agent Maybin testified that, after the first custodial interview

7

had ended, he was on guard in the EPD booking area while Causey was being booked. Agent Maybin testified Causey asked to speak to him, and, during their brief exchange, Causey told Agent Maybin he wanted to speak to the agent alone the next day at noon. In addition, Causey gave Agent Maybin a handwritten note memorializing this request.[6] As Causey was being escorted from EPD to a transport vehicle that would take him to the county jail, he said, in front of the state trooper escorting him, "I did it, I did it."

The next day, per Causey's request, Agents Maybin and Peebles interviewed Causey at the Putnam County Sheriff's office. Before this second custodial interview commenced, the officers again reminded Causey of his rights pursuant to *Miranda*, and Causey agreed to talk. During the second custodial interview, Causey admitted to choking Ivanditti and leaving her unresponsive in her bathtub.

The trial court's determination that Causey did not clearly and unambiguously invoke his right to remain silent during the first

---

[6] The note was admitted into evidence at trial.

custodial interview is consistent with the record evidence. In spite of making statements to the effect that he wanted to leave the police station, Causey never stopped engaging officers in conversation, even after being told repeatedly that he did not have to talk to authorities. See *Cook v. State*, 274 Ga. 891 (4) (561 SE2d 407) (2002) (where defendant said he did not want to talk, but nevertheless continued to do so, request to remain silent was equivocal). Once the first custodial interview was over, Causey affirmatively told officers he wanted to speak to them the next day at noon, indicating that he had no intent to exercise his right to remain silent. See id. at 896 (the defendant's initiation of further dialogue "evinced his intent not to remain silent"); *Johnson v. State*, 301 Ga. 707 (III) (804 SE2d 38) (2017) (statements a defendant made in a conversation he initiated by asking to speak to officer were admissible). Causey also made spontaneous utterances between the two custodial interviews that he "did it." Inasmuch as these utterances were unsolicited and not responsive to any interrogation by authorities, they were admissible. See *Johnson*, 301 Ga. at 711. Accordingly, there was no

reversible error regarding the admission of any statements Causey made while in custody.

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

DECIDED OCTOBER 21, 2019.
Murder. Putnam Superior Court. Before Judge Burleson.
*Keri F. Thompson*, for appellant.

*Stephen A. Bradley, District Attorney, T. Wright Barksdale, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.