**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 21, 2020**

# In the Court of Appeals of Georgia

A19A2289. SANCHEZ v. THE STATE.

MERCIER, Judge.

After his first trial ended in a mistrial, Marvin Sanchez was retried and convicted of kidnapping with bodily injury, aggravated sodomy and battery (as a lesser included offense of aggravated battery.)[1] Sanchez filed a motion for new trial, which the trial court denied. Sanchez appeals, claiming a number of errors related to the victim's failure to appear at his re-trial and the admission into evidence of her prior trial testimony and his custodial statement. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence at trial established the following. See *Green v. State*, 282 Ga. 672 (653 SE2d 23) (2007). On September

---

[1] The jury found Sanchez not guilty of rape, false imprisonment and another count of aggravated sodomy.

27, 2018, the victim was at a restaurant with her boyfriend when she observed three males, later identified as Sanchez, Victor Cruz and Kevin Dominguez, enter and later walk outside to smoke cigarettes. The victim went outside and asked the males if she could have a cigarette. The victim offered to sell them cocaine, but Cruz was not satisfied with the cocaine she offered. The victim and Cruz then engaged in an altercation and the victim struck Cruz in the face with her keys. The three males attacked her, punching her in the face, stomach and back and dragged her into the nearby woods. The males then stripped the victim of her clothes, raped her and sodomized her orally and anally. The males then ran back towards the restaurant, and the victim ran, naked, to a nearby apartment complex. She knocked on the door of an apartment; a man and a woman opened the door, gave her clothes and took her to a nearby convenience store, where the woman called the police.

The responding officer observed that the victim "looked like she'd been punched in the face and beaten to an extent that was extremely bad." While the officer was transporting the victim to the Gwinnett Sexual Assault Center, she vomited blood, so he took her to Gwinnett County Medical Center for treatment instead. A sexual assault nurse conducted a sexual assault examination and observed that the victim appeared "pretty beaten up" and was crying.

2

At Sanchez's first trial, following testimony from the victim and the owner of the restaurant, amongst others, Sanchez's custodial interview was played for the jury. During the playing of Sanchez's interview, the parties discovered that the State had failed to properly redact certain portions of the video. Sanchez moved for a mistrial, which the trial court granted.

At the second trial, Sanchez's videotape interview was played, wherein he made incriminating statements placing himself at the scene and acknowledging that he punched the victim, pushed her head down so she would perform oral sex on Dominguez, and urinated on her. However, he denied raping or sodomizing the victim.

The restaurant owner testified at the second trial that on the night in question, three males entered the restaurant while the victim was there, and she identified Sanchez as one of the males. She testified that the males left the restaurant and five minutes later the victim also left the restaurant and did not return.

The victim failed to appear at the second trial. On the second day of the trial, the State submitted an ex parte motion for a material witness warrant for the victim, which the trial court granted on the same day. The following day, the State informed the trial court that it had been unable to locate the victim, despite the witness warrant

and her having been served with a subpoena a week before the trial. The State contemporaneously filed a motion to declare the victim unavailable and to admit her testimony from the first trial under OCGA § 24-8-804. Sanchez objected to the victim's testimony being admitted, and the trial court held a hearing outside of the jury's presence.

An investigator with the district attorney's office testified that he and another investigator served the victim with a subpoena on January 3, 2017, six days prior to the first day of trial. When the investigators served the subpoena on the victim, she "fell apart," "slumped herself against the door" and said that "she wasn't doing this again." The investigator told her that he was serving her with a subpoena, that she would have to attend the trial and that if she failed to appear a warrant could be issued for her arrest. After she failed to appear at trial, the district attorney investigators conducted a thorough search for the victim, including obtaining a "ping" order for a cell phone with a number they had previously used to communicate with the victim and that the victim had provided when they served her with the subpoena.

Following testimony from the investigator, the trial court found that the victim was an unavailable witness and that the State "expended tremendous resources in trying to get her" to the trial. The trial court granted the motion, over Sanchez's

4

objection, and allowed the victim's testimony from the first trial to be read to the jury in the second trial. Sanchez requested that he be allowed to question the district attorney's investigator about the victim's absence in the presence of the jury, claiming that "flight of the victim . . . is circumstantial evidence of wrongdoing on her part." The trial court ruled that evidence of the victim's failure to appear at the second trial was inadmissible as it was irrelevant and called for speculation. The trial court did allow Sanchez to comment on the victim's absence in that the jury did not have "the opportunity to assess the [victim's] credibility in court[.]"

The transcript of the victim's testimony from the first trial was read to the jury in the second trial. The victim testified that at one point during the attack the males said to each other "we should kill her because if we don't kill her she's going to talk." The victim also testified that she could not tell which of the three males was doing which act to her because she "was getting beat so bad [she] couldn't even pick up [her] head." The victim did not recognize Sanchez at trial.

1. Sanchez claims that the trial court erred by admitting the victim's testimony from the first trial when she failed to appear for the second trial. "We review the trial court's decision to admit evidence for an abuse of discretion." *Bolling v. State*, 300

Ga. 694, 698 (2) (797 SE2d 872) (2017) (citation omitted). OCGA § 24-8-804 ("Rule 804") (b) (1) provides, in pertinent part, that:

> The following shall not be excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Testimony given as a witness at another hearing of the same or a different proceeding, . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

The term "unavailable as a witness" includes situations in which the declarant "[p]ersists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so" or "[i]s absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance . . . or testimony, by process or other reasonable means." OCGA § 24-8-804 (a) (2) and (5). Sanchez concedes that the victim was unavailable pursuant to OCGA § 24-8-804 (a) (5).

However, Sanchez claims that the victim's prior testimony should not have been admitted because after the victim testified at the first trial, he became aware of two "*Brady* violations." First, while the restaurant owner was speaking with the trial court about remaining available as a witness following her testimony at the first trial,

6

she said that the victim told her that "she could not believe, you know, that I was here, you know, speaking against her" and that the owner was fearful because she knew "what [the victim was] capable of."[2] Second, the owner testified during the first trial that on the night after the rape the victim had asked the owner to get her pants because the victim had left cocaine in them. According to Sanchez, the State failed to timely disclose to him the victim's efforts to tamper with evidence at the scene and to intimidate the restaurant owner. He further claims that because he did not learn of these incidents until after the victim testified at the first trial, he had no opportunity or motive to cross-examine her on the information.

In order to determine if a witness's prior testimony should be allowed under Rule 804 "similar motive does not mean identical motive, [and therefore] this inquiry is inherently factual, depending in part on the similarity of the underlying issues and on the context of the questioning." *U. S. v. Miles*, 290 F3d 1341, 1352-1353 (II) (C) (2) (11th Cir. 2002).[3] Here, Sanchez was given the opportunity to cross-examine the

[2] The rule of sequestration had been invoked prior to the first trial.

[3] Georgia's Rule 804 is the counterpart to Rule 804 of the Federal Rules of Evidence, and as such "we may consider the decisions of federal appellate courts, particularly the decisions of the United States Supreme Court and the Eleventh Circuit, construing and applying our rule's federal counterpart." *Bolling*, supra at 698 (2) (footnote and citation omitted).

victim at the first trial, which he did, and he had the similar motive to attempt to discredit her testimony. He was able to question the victim about the fact that she initially did not disclose to the investigating detective that she and the males had agreed to trade marijuana for cocaine and that she possessed the cocaine.

While Sanchez did not know when he cross-examined the victim that she had confronted the restaurant owner at trial or that she had asked restaurant owner to retrieve her pants and cocaine, the underlying issues and the context of his questioning during the cross-examination were similar in both trials. The trial court did not abuse its discretion when it admitted the victim's prior trial testimony into evidence. See generally id.; *Bolling*, supra at 700 (2) (b).

2. Sanchez claims that the trial court erred by ruling that evidence of the victim's flight from her subpoena was inadmissible on grounds of relevancy. "[T]he trial court has broad discretion to exclude evidence on grounds of relevancy, which decision we will not disturb absent manifest abuse." *Baker v. State*, 254 Ga. App. 19, 20 (2) (561 SE2d 185) (2002) (footnote omitted).

Sanchez sought to introduce evidence of the victim's flight to support his argument that the victim fled because she "had attempted to influence a witness and tamper with evidence." However, Sanchez was able to introduce evidence through the

restaurant owner that the victim asked her to retrieve her pants and the cocaine, and that she confronted the owner about testifying against her. Further evidence regarding the victim's possible motives for failing to appear at trial would have been cumulative, speculative and irrelevant. Our Supreme Court has questioned the relevance of evidence regarding a State witness's refusal to testify in a case where such evidence was admitted, stating that "[t]he better practice here would have been for the trial court not to have informed the jury of the witnesses' refusal to testify." *Wallace v. State*, 303 Ga. 34, 40 (3) (810 SE2d 93) (2018). As such, we cannot hold that the trial court committed a manifest abuse of discretion by excluding evidence of the victim's refusal to testify. See generally id.

3. Sanchez claims that the trial court erred by allowing the State to proceed ex parte in obtaining the witness warrant. Sanchez cites no legal authority requiring him to be notified of a material witness warrant, and we have found none. Furthermore, Sanchez has not shown how his presence at the hearing would have lead to a different result. As such, this enumeration lacks merit. See generally *Griffin v. State*, 265 Ga. 552, 554 (6) (458 SE2d 813) (1995) ("It is axiomatic that an appellant, in order to secure a reversal, must demonstrate not only error but harm.")

4. Sanchez claims that the State engaged in prosecutorial misconduct when it "misrepresented to trial counsel the situation regarding" the victim's trial testimony.

> It is well established that a charge of prosecutorial misconduct is a serious charge and is not to be lightly made; having raised it, defendant has the duty to prove it by the record and by legal authority. Additionally, when a defendant alleges a factually specific claim of prosecutorial misconduct, the defendant must show actual misconduct and demonstrable prejudice to his right to a fair trial in order to reverse his conviction.

*Williams v. State*, 328 Ga. App. 876, 881 (2) (763 SE2d 261) (2014) (footnotes and punctuation omitted). Sanchez's trial counsel testified at the motion for new trial hearing that prior to the State calling its first witness at the second trial she asked the assistant district attorney if the victim would be testifying, and he responded that "they had her and that he expected her to appear." At that point the State had served the victim with a subpoena and she had been informed of the consequences of failing to appear for trial. While the victim had expressed that she did not want to testify, Sanchez has failed to show that the prosecutor committed "actual misconduct" by stating that he expected the victim to appear. As such, this enumeration is without merit. See generally id.

5. After conducting a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), the trial court admitted Sanchez's custodial statement. Sanchez argues that the trial court should have excluded the statement because the State failed to meet its burden at the *Jackson-Denno* hearing to show that he understood and waived his rights.

At the time of his interrogation, Sanchez was a juvenile. "[T]he question of a voluntary and knowing waiver [of constitutional rights by a juvenile] depends on the totality of the circumstances and the [S]tate has a heavy burden in showing that the juvenile did understand and waive his rights." *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). The factors to be applied in determining whether a juvenile voluntarily and knowingly waived his or her constitutional rights are as follows:

> The age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether the accused refused to voluntarily give statements on prior occasions; and whether the accused repudiated an extrajudicial statement at a later date.

11

*Green*, supra at 673-674 (2) (citation omitted). "[U]nless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal." *Johnson v. State*, 301 Ga. 707, 711 (III) (804 SE2d 38) (2017) (citations and punctuation omitted).

At the time of the interview, Sanchez was one month away from turning 17 years old and a junior in high school. He was arrested at school, informed that he was in custody and taken to police headquarters, where he was advised of his rights before the interrogation began. Sanchez signed a document acknowledging and waiving his rights, including his right to have a lawyer or parent present. He never asked to consult his parents or an attorney. The interview lasted less than two hours, during which time Sanchez made incriminating statements about himself. He never repudiated his statements. Under the circumstances, we find no error in the trial court's allowing Sanchez's statement into evidence. See *Green*, supra; *Allen v. State*, 283 Ga. 304, 305-306 (2) (658 SE2d 580) (2008) (the fact that the juveniles' parents were not present during questioning was a factor for the trial court to consider, but it was not determinative on the issue of voluntariness of statement).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*

12