**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0240
Hailu Abebe
v.
The State

On Appeal from the Superior Court of Henry County
No. 2020-SU-CR-0838-DR

Decided: May 19, 2026

BETHEL, Justice.

Hailu Abebe was convicted of murder and other crimes in connection with the shooting death of Brian Woolridge.[1] On appeal, Abebe claims the trial court erroneously failed to instruct

---

[1] The crimes occurred on July 7, 2020. In December 2020, a Henry County grand jury indicted Abebe for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), five counts of aggravated assault against Woolridge and four other individuals (Counts 3–7), and five counts of possession of a firearm during the commission of a felony (Counts 8–12).

At a January 2023 trial, a jury found Abebe guilty on all counts except for one count of aggravated assault (Count 7) and one count of possession of a firearm during the commission of a felony (Count 12). The trial court sentenced Abebe to serve life in prison with the possibility of parole on Count 1, a concurrent 20 years' imprisonment on each of Counts 4–6, and a consecutive 5 years' imprisonment on each of Counts 8–11. The remaining counts merged or were vacated by operation of law.

the jury that, before considering Abebe's statements to police, it should first determine whether some of Abebe's pretrial statements were voluntary and obtained in compliance with his rights under *Miranda v. Arizona*, 384 US 436 (1966). We reject Abebe's claim and affirm.

1. Abebe fatally shot Brian Woolridge during a domestic dispute, in the presence of multiple eyewitnesses against whom Abebe also committed aggravated assault. A Henry County Police Department officer was the first officer to respond to the scene of the shooting. The officer's body camera captured his interactions with Abebe at the crime scene, and the footage was played for the jury at trial.

When the officer arrived at the scene, eyewitnesses to the shooting identified Abebe as the shooter. The officer located Abebe, "covered in blood" and in the yard where the shooting occurred, and placed him in handcuffs. While the officer was handcuffing Abebe, a neighbor approached and asked Abebe, "Hey, what's going on, man?" Abebe responded, "They were moving out and leaving me behind, and I didn't like that." While Abebe conversed with the neighbor, the officer called out to others at the scene, alerting them that Abebe was bleeding and asking where the firearm was. The neighbor walked away a few seconds later. The officer walked Abebe around the yard, near where paramedics were providing care to Woolridge, and instructed Abebe to sit

---

Abebe timely moved for a new trial in February 2023 and amended the motion in September 2024, through new counsel. The trial court held a hearing on the motion on September 17, 2024, and denied it on July 1, 2025. Abebe filed a timely notice of appeal, and this case was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

on the ground.

While the officer was attempting to secure the scene, Abebe interrupted and tried to get his attention. The officer responded, "Just sit still, just sit still." Abebe interjected, "I have my notes." The officer responded, "You have a what?" Abebe repeated, "A note, a note. May I take it out?" The officer instructed Abebe not to move and to stay where he was, then resumed his attempts to secure the scene. Several seconds later, Abebe again tried to get the officer's attention, saying, "Sir, sir." The officer remained preoccupied with securing the scene and instructed Abebe to "just hold tight." Abebe persisted, requesting that the officer retrieve the "notes" from Abebe's pocket.

Over the next minute, the officer continued trying to secure the scene and attempted to determine whether Abebe—visibly covered in blood from his head down—had been shot or otherwise injured and where the blood was coming from. Abebe again returned to the issue of the note, indicating that he had a note in his pocket and directing the officer to his rear pocket. The officer asked where the note was, pulled several notes from Abebe's pocket, and asked Abebe, "What's the note for?" Abebe responded, "To show you why I did what I did." Again, the officer did not engage Abebe in conversation about the note or the events surrounding the shooting.

The officer resumed his efforts to secure the scene until, around two minutes later, Abebe again got his attention. Abebe told the officer that he bought a house for his family, who "betrayed [his] trust" and "made [his] life miserable." Abebe said, "That's what the note is about." The officer repeated the last statement back to Abebe, who responded, "Yes, sir."

Before trial, Abebe moved to suppress his statement to the neighbor, his statement to the arresting officer regarding the

3

notes, and the notes themselves. Among other things, the notes said: "Goodbye my lying and not so good son"; "We could have lived a great life together. You betrayed my trust and ruined my retirement life. Now you all moving out, leaving me behind"; and "I bought this house for my son and one big happy family. But you ruined my life instead and took the house away from my son making him homeless. You destroyed my retirement life … . You are not going to have a glamorous life at our expense and your madness should stop." Abebe argued that suppression was warranted because he "did not knowingly and voluntarily waive his right to remain silent with an understanding of his rights" and requested a *Jackson-Denno*[2] hearing to determine the statements' admissibility.

At the subsequent hearing, Abebe elaborated on the basis for his suppression motion, arguing that his statements were involuntary because he "[s]eemed to be severely injured." The trial court asked whether the only basis for Abebe's argument that his statement was involuntary was Abebe's head injury, and Abebe responded affirmatively. The trial court denied Abebe's motion in an oral ruling. It found, based on the totality of the circumstances, that while Abebe was in custody when he made the statements, the statements were not made in response to any police interrogation. As to Abebe's head injury, the trial court noted that Abebe was coherent, compliant, and responsive to commands. Regarding the statement to the neighbor, the trial court found it to be spontaneous. The court further noted the lack of evidence that the notes found in Abebe's pocket were written after the head injury was inflicted.

---

[2] *Jackson v. Denno*, 378 US 368 (1964).

In his pre-trial requests to charge, Abebe requested Georgia Pattern Jury Instruction 1.32.15, "Statement of Defendant."[3] Later, during the charge conference, the State opposed the instruction because it concerned whether Abebe "was Mirandized and whether … he voluntarily offered to answer the police questions" and Abebe's statements were not made in response to any police questioning. Abebe offered little in response, simply insisting the instruction was appropriate because he was in custody at the time he made his statements. The court declined to give the instruction, reasoning that it would confuse the jury to determine "issues of *Miranda* and constitutional rights" that were inapplicable to the case. Abebe excepted to the ruling.

2. In his sole enumeration of error, Abebe argues that the trial court erroneously declined to instruct the jury to consider whether Abebe's statements—to his neighbor, to the arresting officer, and in several notes presented to that officer—were made after Abebe had been informed of and waived his rights under *Miranda v. Arizona*, 384 US 436 (1966), and whether Abebe made those statements voluntarily. But Abebe was not entitled to either instruction, so this claim fails.

(a) We turn first to Abebe's claim that the trial court should have instructed the jury to resolve certain "*Miranda* issues" regarding Abebe's statements to and in the presence of the arresting officer. Specifically, he claims that the jury should have been charged with determining whether his statements were "taken in

---

[3] The "jury instruction" Abebe requested below and cites on appeal is in fact a bench note in the pattern instructions that directs trial courts on the procedure to address *Miranda* and voluntariness issues. See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.32.15. But it is clear from the context of the pattern instructions and from Abebe's requests at trial that he sought to have the jury determine whether his statements were made voluntarily and in compliance with *Miranda*.

violation of his *Miranda* rights."[4] We disagree.

"A jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." *Morris v. State*, 308 Ga. 520, 529 (2020) (cleaned up). "[T]o authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge." *McClure v. State*, 306 Ga. 856, 863 (2019) (cleaned up). "Whether the evidence presented is sufficient to authorize the giving of a jury charge is a question of law, which this Court reviews de novo." *Gray v. State*, 319 Ga. 72, 75 (2024) (cleaned up).

"*Miranda* warnings must be administered when two factors are met: the accused is in custody, and is subjected to interrogation or its functional equivalent." *Johnson v. State*, 301 Ga. 707, 711 (2017). Interrogation is, of course, "express questioning." *State v. Pauldo*, 309 Ga. 130, 134 (2020) (quotation marks omitted). And the functional equivalent of interrogation is conduct "the police should know [is] reasonably likely to elicit an incriminating response from [a] suspect." Id. (quotation marks omitted). But "[a] statement which is spontaneous and unsolicited as not made in response to any form of custodial interrogation is not bound by the strictures of *Miranda* and is admissible without the warnings having been given." *Barrett v. State*, 289 Ga. 197, 199 (2011). So an instruction requiring the jury to determine whether a defendant knowingly and voluntarily waived his rights under *Miranda* is unwarranted where the challenged statements were

---

[4] Abebe also argues that the jury should have been charged with determining "whether [Abebe] needed to be informed of his constitutional rights" in connection with the challenged statements. Contrary to Abebe's suggestion, the jury's role as to *Miranda* issues would be to evaluate whether Abebe understood and knowingly and voluntarily waived his *Miranda* rights prior to custodial interrogation—not whether *Miranda*'s procedural requirements attached in the first place. See *Volkova v. State*, 311 Ga. 187, 189–92 (2021).

"spontaneous and unsolicited"—that is, not made in response to police "interrogation or its functional equivalent." Cf. *Johnson*, 301 Ga. at 711; *Volkova v. State*, 311 Ga. 187, 192 (2021) (favorably citing *Gonzalez v. State*, 277 Ga. App. 362, 370 (2006), where Court of Appeals held that *Miranda* instruction was inapposite when trial court determined challenged statement not made in response to interrogation).

Here, the evidence shows that none of the statements Abebe sought to suppress were made in response to police interrogation. Abebe made his incriminating statements—concerning his family members moving out and "why [he] did what [he] did"—either to someone other than police or while the arresting officer was trying to secure the crime scene rather than question Abebe. The officer's body camera footage shows that Abebe's repeated interjections were made during the officer's attempt to quell the post-shooting chaos, not the intended result of any police interrogation or its equivalent.[5] Indeed, the officer consistently tried to dissuade Abebe's efforts to communicate with him about the notes. And nothing suggests the notes themselves were the product of police interrogation: the notes were already in Abebe's pockets at the time he was arrested, so they were apparently not written in response to police questioning or its functional equivalent. Far from custodial interrogation, the record reflects Abebe's persistent, spontaneous efforts to tell the arresting officer and a

---

[5] We note that the officer did at one point ask Abebe: "What's the note for?" But we do not see that as interrogation or its functional equivalent. The officer asked that question in response to Abebe's insistence that the officer remove the notes from Abebe's pocket. We view the officer's question as trying to understand why—despite the chaos of the scene—Abebe kept pushing the officer to get the notes from Abebe's pocket. We cannot say that the officer's question was "reasonably likely to elicit an incriminating response." *Pauldo*, 309 Ga. at 134 (quotation marks omitted).

bystander "why [he] did what [he] did." In short, the record shows that Abebe's statements were spontaneous and not made in response to any police interrogation. See *Johnson*, 301 Ga. at 711 (appellant's statement admissible despite lack of *Miranda* warnings where appellant initiated discussion with investigating officer and made incriminating statement that "was spontaneous, unsolicited, and not prompted by the investigators' express questioning"); *Smith v. State*, 264 Ga. 857, 859 (1995) (same). As such, a jury instruction treating Abebe's statements as the product of police interrogation and requiring the jury to find that Abebe waived his rights under *Miranda* as a prerequisite to considering his statements would not have been adjusted to the evidence. The trial court therefore correctly rejected the request for such an instruction. See *Volkova*, 311 Ga. at 191–92. See also *Austin v. State*, 300 Ga. 889, 891 (2017) ("A trial court does not err by failing to give a jury charge where the requested charge is not adjusted to the evidence presented at trial." (cleaned up)).

(b) We also reject Abebe's claim that the trial court should have instructed the jury to consider whether Abebe's statements were made voluntarily. As noted above, jury instructions must be adjusted to the evidence and must state the applicable law completely and correctly. *Morris*, 308 Ga. at 529. And there must be slight evidence to warrant a jury instruction. See *McClure*, 306 Ga. at 863. We have recognized that voluntariness can be an issue under federal law or state law. See *Quintanar v. State*, 322 Ga. 61, 63 n.2 (2025) (distinguishing federal due process voluntariness claims and state law voluntariness claims based on OCGA § 24-8-824).[6] To demonstrate that a statement was involuntary as

---

[6] Abebe does not distinguish between the two types of voluntariness claims. He does not reference or cite the state statute on appeal, nor did he do

8

a matter of federal constitutional due process rights requires evidence of police coercion. See *State v. Franklin*, 318 Ga. 39, 43–45 (2024). So, for a defendant to be entitled to a federal due process voluntariness instruction, there must be at least slight evidence of police coercion. And Georgia statutory law prohibits admission of confessions "induced by another by the slightest hope of benefit or the remotest fear of injury." OCGA § 24-8-824. So, for a defendant to be entitled to a state law voluntariness instruction, he must point to slight evidence that his confession was induced by either a hope of benefit or fear of injury. See *Irby v. State*, 95 Ga. 467, 467–48 (1894); *McClure*, 306 Ga. at 863 (slight evidence required to warrant jury instruction).

Abebe makes no effort to identify even slight evidence supporting either jury instruction. Instead, he seems to suggest that he is automatically entitled to some jury instruction on voluntariness simply by virtue of having requested it. But voluntariness instructions—like all others—must be adjusted to the case and supported by at least slight evidence. *Morris*, 308 Ga. at 529; *McClure*, 306 Ga. at 863. So Abebe has failed to carry his burden of showing that the evidence supported a voluntariness instruction, and this claim fails. *Irby*, 95 Ga. at 467–48. See also, e.g., *Hayes v. State,* 320 Ga. 505, 521 (2020) (not error to refuse requested jury instruction when defendant points to no evidence

---

so below. And, as noted above, the "jury instruction" Abebe requested below and cites on appeal is in fact a bench note in the pattern instructions rather than an actual pattern instruction. It is therefore unclear whether Abebe thinks the jury should have been told to determine whether his statements were involuntary under federal law, state law, or both. But he was not entitled to a voluntariness instruction under either, so this lack of clarity does not affect our ultimate conclusion.

supporting instruction).[7]

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*

---

[7] Abebe argues that improper refusal to instruct the jury on voluntariness is an error of constitutional magnitude, subject to the beyond-a-reasonable-doubt standard for harmlessness review. Because we conclude that the trial court did not improperly refuse any instructions, we need not address this argument.