310 Ga. 652
FINAL COPY

S21A0262. DORICIEN v. THE STATE.

MELTON, Chief Justice.

Following a November 2018 jury trial, Jean Claude Doricien was found guilty of felony murder, possession of less than one ounce of marijuana, and various other offenses in connection with the shooting death of Tovara Flowers.[1] On appeal, Doricien contends that the trial court erred in denying his motion for a directed verdict of acquittal, that the trial court erred by failing to exclude from trial

---

[1] On January 6, 2018, Doricien was charged with felony murder predicated on aggravated assault, aggravated assault, possession of a firearm during the commission of a felony, and possession of less than one ounce of marijuana. At the November 5 to 7, 2018 jury trial, Doricien was found guilty on all counts. On the last day of trial, Doricien was sentenced to life in prison for felony murder, five years consecutive for possession of a firearm, and twelve months for the misdemeanor possession charge to run concurrent with the felony murder sentence. The aggravated assault count was merged into the felony murder count for sentencing purposes. Doricien filed a motion for new trial on November 8, 2018, and his trial counsel withdrew from representing Doricien that same day. Doricien obtained new counsel, and, after a November 4, 2019 hearing, the trial court denied Doricien's motion for new trial on December 2, 2019. Doricien filed a timely notice of appeal to the Court of Appeals on December 20, 2019, and his appeal was transferred to this Court on August 26, 2020. Doricien's appeal was docketed in this Court to the term beginning in December 2020 and submitted for a decision on the briefs.

various statements that Doricien made to the police, and that he was denied constitutionally effective assistance of trial counsel. We affirm.

1. Doricien argues that the trial court erred in denying his motion for a directed verdict of acquittal on felony murder, aggravated assault, and possession of a firearm during the commission of a felony because he presented evidence at trial that he acted in self-defense when he shot Flowers.[2] We disagree.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of

---

[2] In a somewhat related enumeration, Doricien also argues that the trial court erred by failing to grant him a new trial on the general grounds set forth in OCGA §§ 5-5-20 ("In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury.") and 5-5-21 ("The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."). However, this argument presents nothing for us to review, as Doricien does not contend that the trial court applied the wrong standard in reaching its decision, see, e.g., *Hodges v. State*, __ Ga. __ (2) (847 SE2d 538) (2020), but simply disagrees with the trial court's decision to deny him relief, see, e.g., *Wilson v. State*, 302 Ga. 106, 109 (II) (d) (805 SE2d 98) (2017). "Trial courts have discretion to grant a new trial on . . . the 'general grounds' . . . but appellate courts do not. Our review is limited to the legal sufficiency of the evidence." (Citation omitted.) *Plez v. State*, 300 Ga. 505, 507 (1) n.2 (796 SE2d 704) (2017).

2

the evidence to support a conviction." *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007). When evaluating the sufficiency of evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). On appeal, "this Court does not re-weigh the evidence or resolve conflicts in testimony, but instead defers to the jury's assessment of the weight and credibility of the evidence." (Citation omitted.) *Curinton v. State*, 283 Ga. 226, 228 (657 SE2d 824) (2008).

Viewed in the light most favorable to the verdicts, the evidence presented at trial reveals that, on October 24, 2017, Doricien was at a housing project in Valdosta when he shot Flowers in the back five times, killing him. A witness who heard the gunshots saw a man matching Doricien's description fleeing the scene, and a security camera from a nearby apartment building recorded Doricien as he

placed a gun in his waistband while he fled the area.

The police apprehended Doricien a few blocks away from the crime scene, and, at that time, he had two small baggies of marijuana in his possession and a black Rossi .38-caliber handgun tucked into his front waistband. There were five spent rounds in the cylinder of the handgun, and firearms testing confirmed that the bullets recovered from Flowers's body had been fired from the gun found on Doricien.

After the police placed Doricien in handcuffs, Detective Kyle Salter asked Doricien if he needed to contact anyone. Doricien indicated that he wanted to contact his girlfriend, and the detective allowed him to do so by dialing the girlfriend's number for Doricien on the detective's work cell phone and placing the call on speakerphone. During the call, Doricien told his girlfriend that he had "f**ked up" and messed up his life, and that he had been robbed.

Detective Salter informed Doricien that the police were going to take him to the police station, and, without being asked any questions by Detective Salter or anyone else, Doricien again stated

4

that he had messed up his life and had been robbed, and went on to state that he was afraid, that someone had put a gun to his head, and that he had only been trying to buy some weed.

After arriving at the police station and being advised of his *Miranda*[3] rights by Detective Jason Woods, Doricien agreed to be interviewed by the police. During the interview, Doricien admitted shooting Flowers in the back as Flowers was turning to run away from him. Doricien claimed that someone other than Flowers had placed a gun to Doricien's head, robbed him during a failed marijuana transaction, and then fled the scene in a red Nissan Altima. Doricien stated that he retrieved a gun, returned to the area where he had been robbed, and shot Flowers, who was unarmed. Although Doricien admitted that Flowers was not the person who allegedly robbed him, he claimed that he was acting in self-defense when he shot Flowers in the back because he was afraid.

This evidence was sufficient for a rational trier of fact to reject Doricien's claim of self-defense and find him guilty beyond a

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

reasonable doubt of felony murder and possession of a firearm during the commission of a felony.[4] See, e.g., *Sessions v. State*, 304 Ga. 343 (1) (818 SE2d 615) (2018) (jury was free to reject self-defense theory and find defendant guilty of murder, aggravated assault, and other offenses where the defendant retrieved handgun, returned to victim's home 20 minutes later, and shot victim in the back).[5] Accordingly, the trial court did not err by denying Doricien's motion for a directed verdict of acquittal.

2. Doricien claims that the trial court erred by denying his

---

[4] Because the aggravated assault count was merged into the felony murder conviction for sentencing purposes, there is no separate "conviction" on aggravated assault for this Court to review for sufficiency. See *Anderson v. State*, 299 Ga. 193, 196 (1) n.4 (787 SE2d 202) (2016) (a defendant is not "convicted" on counts that are vacated or that merge with other offenses for sentencing purposes, and challenges to the sufficiency of evidence to support those non-existent convictions are moot). See also OCGA § 16-1-3 (4) ("'Conviction' includes a final judgment of conviction entered upon a verdict or finding of guilty of a crime upon a plea of guilty.").

[5] Because Doricien does not challenge the sufficiency of the evidence to support his conviction for possession of less than one ounce of marijuana, we do not address the sufficiency of the evidence to support that conviction. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020) (ending this Court's formerly routine practice of reviewing sua sponte the constitutional sufficiency of the evidence to support convictions in appeals of non-death penalty murder cases, beginning with cases that were docketed to the term of this Court that began in December 2020).

6

motion to suppress the statements that he made while he was on the phone with his girlfriend and while he was handcuffed in the back of the police car before he was taken to the police station. Specifically, Doricien asserts that, because he was in custody and Detective Salter was present when the statements were made, the statements were inadmissible because he had not yet been read his *Miranda* rights. Doricien is incorrect.

> *Miranda* warnings must be administered when . . . the accused is in custody . . . and is subjected to interrogation or its functional equivalent[,] . . . [but] a spontaneous and unsolicited statement is admissible without *Miranda* warnings if it was not elicited by questioning or made in response to any form of custodial interrogation.

(Citations omitted.) *Johnson v. State*, 301 Ga. 707, 711 (III) (804 SE2d 38) (2017).

Detective Salter's unrebutted testimony at the motion to suppress hearing revealed that the detective did not ask Doricien anything to elicit a response from him about the crimes that had just occurred on the night of his arrest. Rather, with no prompting from the detective, Doricien spontaneously said while on the phone with

7

his girlfriend that he had "f**ked up" and messed up his life. Then, while in the back of the police car, Doricien continued to offer unsolicited statements about messing up his life and being robbed, being afraid, having a gun put to his head, and trying to buy some marijuana. The police were under no obligation to stop listening to the spontaneous statements that Doricien chose to make, and, because the statements were not elicited by interrogation, they were properly admissible at Doricien's trial. See *Hernandez v. State*, 299 Ga. 796, 800 (3) (792 SE2d 373) (2016).

3. Doricien argues that the trial court erred by failing to exclude his video recorded custodial statement from trial because the police failed to determine if he may have been intoxicated at the time that he was read his *Miranda* rights and agreed to be interviewed. However,

> [t]he mere fact that a defendant was intoxicated at the time of the statement[ ] does not automatically render [it] inadmissible. In this regard, the trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. On appeal, we accept the trial court's findings on disputed facts and credibility of

8

witnesses unless clearly erroneous, but independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Lewis v. State*, 298 Ga. 889, 890-891 (2) (785 SE2d 520) (2016).

Detective Woods testified at the motion to suppress hearing that he was trained to recognize whether a person was under the influence of drugs or alcohol, and that Doricien did not appear to be intoxicated in any way at the time of the interview. Before the interview, Detective Woods asked Doricien the date, the day of the week, the city and state where he was located, and the name of the President of the United States. Doricien answered all of the questions correctly and coherently, and then indicated that he wanted to tell his side of the story. Although Doricien stated about a half hour into the interview that he had smoked a small amount of marijuana about six hours before the interview with the police began, he remained coherent during the entire interview, showed no signs of intoxication, and showed his understanding of everything that was happening and being said. In short,

9

[t]here was nothing to indicate that [Doricien's] statement[ ], even if made while he was intoxicated, [was] not the product of rational intellect and free will. Based on our careful review of the evidence before the trial court, we find that the trial judge was authorized to find that [Doricien] was rational and coherent and that his statement[ ] [was] given knowingly and voluntarily. [Cit.]

*Jones v. State*, 285 Ga. 328, 329-330 (2) (676 SE2d 225) (2009).

4. Finally, Doricien claims that he received constitutionally ineffective assistance of trial counsel when counsel failed to call witnesses at trial who could have highlighted contradictions in the stories of other witnesses.[6] In order to establish ineffective assistance of counsel, Doricien must show both deficient

---

[6] Doricien also alleges that trial counsel spent inadequate time conferring with him before trial and that trial counsel failed to review evidence with him prior to trial. However, these claims of ineffective assistance of counsel were not adequately raised, nor were they ruled upon, at the motion for new trial stage and were therefore waived. See *Elkins v. State*, 306 Ga. 351, 361 (4) (b) n.5 (830 SE2d 217) (2019); *Jones v. State*, 294 Ga. 501, 503 (2) (755 SE2d 131) (2014) (bare assertion of ineffective assistance of trial counsel in amended motion for new trial, "with no additional detail or argument," was insufficient to preserve the claim for review on appeal). Doricien did not assert these claims in his motion for new trial, contending only in his motion that "the Defendant has raised questions about the effectiveness of Counsel at the time of trial." And a review of the motion for new trial transcript reveals that Doricien did not question his trial counsel about either of these matters. Nor did the trial court rule on them. Thus, there is nothing for this Court to review with regard to these claims of ineffective assistance of counsel. See *Jones*, supra, 294 Ga. at 503 (2). See also *Elkins*, supra, 306 Ga. at 361 (4) (b) n.5.

performance of his trial counsel and that this deficient performance prejudiced his defense. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Here, even if we assume that counsel performed deficiently by failing to call the unspecified witnesses referred to by Doricien, there has been no showing that Doricien was prejudiced by his counsel's alleged deficient performance.

> The failure of trial counsel to employ evidence cannot be deemed to be "prejudicial" in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because [Doricien] failed to make any proffer of the uncalled witnesses' testimony, it is impossible for [him] to show there is a reasonable probability the results of the [trial] proceedings would have been different. It cannot possibly be said that the additional witnesses would have testified favorably to [Doricien].

(Citations and punctuation omitted.) *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995). Therefore, this claim of ineffective assistance of counsel must fail.

*Judgment affirmed. Nahmias, P. J., and Boggs, Peterson, Bethel, Ellington, and McMillian, JJ., concur. Warren, J., not participating.*

11

DECIDED DECEMBER 21, 2020.

Murder. Lowndes Superior Court. Before Judge McDaniel.

*Andrew V. Thomas II*, for appellant.

*Bradfield D. Shealy, District Attorney, Michelle T. Harrison, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Kathleen L. McCanless, Assistant Attorneys General*, for appellee.