**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 8, 2021**

# In the Court of Appeals of Georgia

A21A0237. IN RE RAGAS.

MCFADDEN, Chief Judge.

Arnold Ragas appeals from the trial court's order finding him in criminal contempt of court. Because the evidence was insufficient to find him in criminal contempt, we reverse.

1. *Facts and procedural history.*

In reviewing a criminal contempt conviction, we consider "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re Irvin*, 254 Ga. 521, 526 (2) (328 SE2d 215) (1985).

So viewed, the evidence showed that Ragas represented a defendant, Ricky Taylor, in three criminal proceedings in which Taylor entered a global plea

agreement. Among other things, Taylor's sentence required him to complete a twelve-month Extension Residential Recovery Program. As part of the sentence, Taylor was to "remain in jail until accepted and space is available." The prosecutor handwrote that requirement on the sentencing order and underlined the phrase "remain in jail" so that the sheriff's office would know that Taylor could not be released from jail unless he had been accepted into the rehabilitation program and space was available for him.

On November 27, 2019, the Wednesday before Thanksgiving, Ragas picked up Taylor and drove him to a treatment center where he was interviewed but not accepted into a rehabilitation program due to a lack of available bed space. Ragas then drove Taylor to a restaurant and left him there with Taylor's brother.

On December 3, Ragas appeared in court on unrelated matters before the judge who had sentenced Taylor. At that time, he did not inform the court or the district attorney's office about what had occurred with Taylor the previous week.

On December 4, Taylor failed to report to his probation officer, who informed Ragas that she was going to take out an arrest warrant for him. The next day, Ragas contacted the trial court and the prosecutor by email. He told them what had happened with Taylor after he picked up the defendant from jail and sought clarification from

2

the court about whether Taylor would be arrested if he reported to probation. An arrest warrant was issued that day. At he time of Ragas's contempt hearing Taylor remained at large.

The trial judge issued a criminal contempt citation against Ragas based on what she deemed to be "acts of disregard for or disobedience to the order of the [c]ourt" and Ragas's "lack of candor" with the court between the date of the defendant's release (November 27) and the date of Ragas's email to the court (December 5). The trial judge asserted that Taylor's sentence clearly required him to remain in custody until he was accepted into the treatment center and space was available for him; she never gave Ragas permission to take Taylor anywhere other than the treatment center and Ragas should have returned Taylor to jail when he learned Taylor would not be accepted into the center; and Ragas should have communicated with her sooner about what had happened with Taylor.

The trial judge recused herself, and the newly-assigned judge conducted a hearing on the contempt citation. At the conclusion of the hearing, she stated that the burden of proof was "clear and convincing evidence, and I find clear and convincing evidence." The court then issued an order that found Ragas in criminal contempt of

3

court for the reasons alleged in the citation, and concluded that Ragas's actions were willful. The order did not address the standard of proof for criminal contempt.

On appeal, Ragas argues that the trial court applied the wrong standard of proof and that the evidence was insufficient to support his criminal contempt conviction. As detailed below, we agree with both claims of error.

2. *Standard of proof.*

A conviction for criminal contempt requires proof beyond a reasonable doubt. *In re Crane*, 253 Ga. 667, 670 (2) (324 SE2d 443) (1985). In this case, the trial court's only statement as to the standard of proof was erroneous, and she never corrected herself.

Under most circumstances, this error would require us to vacate the order and remand the case for the trial court to apply the proper standard to the existing record, even though Ragas did not object to the trial court's mention of the incorrect standard at the hearing. See *Mathis v. Corrugated Gear & Sprocket*, 263 Ga. 419, 421 (5) (435 SE2d 209) (1993) (where record does not indicate whether trial court applied the beyond-a-reasonable-doubt standard, we must vacate the judgment of contempt and remand the case to the trial court for application of that standard); *In re A. S.*, 293 Ga. App. 710, 712-173 (2) (667 SE2d 701) (2008) (because adjudication under erroneous

4

standard of proof raised a question of whether juvenile, who had been adjudicated delinquent, was deprived of a fair trial, the case was remanded for application of the correct standard even though juvenile had not objected to incorrect standard).

But remand for application of the correct standard is not appropriate where the evidence is legally insufficient to support the conviction, because the state cannot rectify evidentiary deficiencies on remand. See *Brantley v. State*, 272 Ga. 892, 893 (536 SE2d 509) (2000) (under Double Jeopardy Clause, remand for further proceedings is inappropriate if evidence is legally insufficient to support conviction); *Tanks v. State*, 292 Ga. App. 177, 178 (663 SE2d 812) (2008) (protection of Double Jeopardy Clause attaches in nonsummary criminal contempt proceeding).

Ragas enumerated as error the sufficiency of the evidence. That enumeration is wholly proper. Review of the sufficiency of the evidence is a core responsibility of an appellate court. Indeed, until recently, our Supreme Court reviewed the sufficiency of the evidence in all murder cases, and continues to do so in death-penalty cases — whether or not the appellant had raised the issue. *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020).

Of course, when an appellate court reviews the sufficiency of the evidence, it does so with due deference to the role of the fact finder. That deference is

5

accomplished by adhering to the applicable standard of review. Under the standard applicable here, "we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts." *Doricien v. State*, 310 Ga. 652, 656 (3) (853 SE2d 120) (2020) (citation omitted). In Georgia, unlike the federal appellate courts, the clearly-erroneous standard is synonymous with the any-evidence standard. *Hall v. Ault*, 240 Ga. 585, 586 (242 SE2d 101) (1978).

If the evidence, viewed under that deferential standard, is legally insufficient, a reviewing court must find it so, in which case, under the Double Jeopardy Clause, "'the only just remedy available for that court is the direction of a judgment of acquittal.'" *Brantley*, 272 Ga. at 893 (quoting *Burks v. United States*, 437 U. S. 1, 18 (III) (89 SCt 2141, 57 LE2d 1) (1978)).

3. *Sufficiency of the evidence.*

The trial court based the contempt judgment on two grounds: Ragas's failure to obey his client's sentencing order, and Ragas's failure to inform the trial court that his client was in violation of the sentencing order. The evidence was insufficient to find Ragas in contempt for either.

(a) *Failure to obey client's sentencing order.*

6

The judge who presided over the criminal trial listed Ragas's disobedience of the sentencing order in her citation for contempt. The judge who thereafter found Ragas to be in contempt also cited his disobedience to the sentencing order as a ground for her finding. And the state argued both below and on appeal that Ragas was in contempt for violating the sentencing order.

The sentencing order in this case was not directed to Ragas. It was directed to Ragas's client, the sentenced defendant Ricky Taylor, requiring Taylor to remain in jail unless he was admitted to a rehabilitation facility. The sentencing order did not require Ragas to take any action or refrain from any action; it did not mention Ragas at all.

Generally "[a] person cannot be found in contempt of a court order or writ which was not directed to him." *American Express Co. v. Baker*, 192 Ga. App. 21, 23 (2) (383 SE2d 576) (1989). We have applied this principle to hold the evidence insufficient to find an attorney in criminal contempt of an order that was directed at the actions of another person involved in a case. *In re Hadaway*, 290 Ga. App. 453, 457 (659 SE2d 863) (2008). Compare *In re Dillon*, 344 Ga. App. 200, 201-203 (808 SE2d 436) (2017) (affirming judgment of criminal contempt against attorney who

failed to comply with a court order directed to attorney's behavior in the case at issue).

There are exceptions to this principle. See *Wilkerson v. Tolbert*, 239 Ga. 702, 704 (238 SE2d 338) (1977) (principle that a person "may not be held in contempt of an order to which she was not a party . . . may be the general rule, [but] is not the invariable rule"). In *The Bootery v. Cumberland Creek Props.*, 271 Ga. 271 (517 SE2d 68) (1999), our Supreme Court adopted rules in force in "the majority of foreign jurisdictions" setting out the circumstances in which "the violation of a court's order by one who was not a party to the proceedings can be punished as a contempt." Id. at 272 (2). It must be "alleged and proved that the contemnor had *actual* notice of the order for disobedience of which is sought to be punished [and that] the nonparty be in privity with, aid and abet, or act in concert with the named party in acts constituting a violation of the order." Id. at 272 (2) (citations and punctuation omitted; emphasis in original).

Accordingly, Georgia courts have held nonparties in contempt where they had a legal identity or privity with the person to whom the order was directed and were acting on behalf of that person when they violated the order. For example, in *Murphy v. Murphy*, 330 Ga. App. 169, 176-177 (6) (a) (ii) (767 SE2d 789) (2014), we

8

affirmed a contempt judgment against an attorney in a child custody case for discussing the case with his client's minor children (in order to obtain affidavits from them) when the trial court had ordered his client not to discuss the case with them. And in *Sullivan v. Bunnell*, 340 Ga. App. 283, 290-291 (2) (797 SE2d 499) (2017), we held that a contempt action could proceed against a person who, acting under a power of attorney, caused payments required by the principal's divorce decree not to be paid.

The *Murphy* and *Sullivan* cases are fundamentally different from the case before us. The orders in those cases involved express commands or prohibitions that the contemnors, in their capacities as legal representatives of the persons to whom the orders were directed, were obliged to follow. The attorney in *Murphy* could himself comply with the prohibition directing his client not to discuss the case with the children, and the attorney-in-fact in *Sullivan* could herself comply with the command directing her principal to make certain payments. In contrast, Ragas could not himself comply with his client's sentencing order. The order required Taylor to remain in jail; Ragas was not capable of satisfying this requirement on Taylor's behalf. For the state to show the wilfullness necessary to establish criminal contempt for violating a court order, it must show "that the alleged contemnor had the ability to comply with the

9

court order[.]" *In re Bowers*, 308 Ga. App. 241, 242 (706 SE2d 694) (2011). Unlike in *Murphy* or *Sullivan*, there is no evidence that Ragas had the ability to comply with Taylor's criminal sentence. Cf. *Salter v. Greene*, 226 Ga. App. 384, 386 (2) (486 SE2d 650) (1997) (noting in dicta that, "[a]s a matter of law, the appellant cannot be found in contempt for violating a condition of another person's bond"). The gravamen of the contempt citation is an implicit finding that Ragas had a duty to comply with the sentencing order by enforcing it.

There is also not evidence in the existing record to show, beyond a reasonable doubt, that Ragas had the necessary intent to find that he aided and abetted or acted in concert with Taylor in violating the sentencing order. Our Supreme Court has recognized the need for a court's contempt power to "be broad enough to reach those who, while not a party to the decree, *seek to subvert* the effectuation of a court's decree." *Wilkerson*, 239 Ga. at 704 (emphasis supplied). Indeed, the offense of aiding and abetting another requires a common criminal intent between the aider or abettor and the perpetrator. See *Hixon v. State*, 251 Ga. App. 27, 28 (1) (553 SE2d 333) (2001). We discern nothing in the evidence presented to the trial court that would support a finding that Ragas intended to subvert Taylor's sentence by helping him escape custody. Rather, Ragas testified that he did not know what to do when the

10

rehabilitation facility refused to accept Taylor, and the state offered no evidence to the contrary. The evidence simply shows confusion and uncertainty on the part of a person who is not a jailor, who has no authority to exercise police powers over an inmate, and who has not been shown to have accepted a responsibility to enforce Taylor's compliance with his criminal sentence.

It may be that Ragas was given specific obligations, responsibilities, or authority in connection with transporting Taylor. But aside from the sentencing order, which assigns no such responsibilities or authority to Ragas, the state presented no evidence of any order or direction that it claims Ragas disobeyed and, as stated above, the Double Jeopardy Clause prevents the state from rectifying this or any other evidentiary omission on remand. See *Tanks*, 292 Ga. App. at 178.

(b) *Failure to inform trial court of client's violation of sentencing order.*

The trial court also cited, as a separate ground for the contempt judgment, Ragas's "lack of candor with the court occurring between November 27, 2019 and December 5, 2019 concerning these willful actions." In other words, the trial court determined that Ragas was in criminal contempt for not informing her that Taylor, whom the jail had released to him to transport to the rehabilitation facility, had in fact

11

not been admitted to the facility and currently was in violation of the terms of Taylor's sentence.

"A court is authorized to find an attorney, as an officer of the court, in contempt for misbehavior in his or her official transactions [under OCGA § 15-1-4 (a) (2)]." *Dillon*, 344 Ga. App. at 202. That Code section "is intended to impose upon officers of the courts engaged in their official transactions a higher duty to the court than is demanded of others. Accordingly, courts have broader contempt powers in cases of misbehavior of any of the officers of the courts." Id. at 202-203 (citations and punctuation omitted).

But the evidence does not show that Ragas was engaged in an official transaction with the court when he took Taylor to the rehabilitation facility. There is no evidence that Ragas was still providing Taylor with legal representation at that time.

More fundamentally, responsibility for enforcing a sentencing order or transporting a convicted defendant to and from jail generally is not imposed upon an attorney. It is true that attorneys' tripartite responsibilities to their client, opposing counsel, and the court are often in tension. But calling upon an attorney to enforce a criminal sentence of incarceration is a difference not merely in degree but in kind.

12

As there is no evidence that Ragas had been ordered or had agreed to assume such responsibilities, or that he otherwise was assigned some sort of official capacity in transporting Taylor, we should not step in to establish and set out the parameters of such responsibilities or such a capacity.

Ragas cannot be liable for falling short of a duty of candor unless that duty applied under the facts of this case. Unlike most cases involving the duty of candor, this case does not involve misrepresentations or omissions that Ragas made to the court in the context of a court appearance or pleading in the matter at issue. And we have found no Georgia authority addressing the scope of an attorney's duty of candor in circumstances that would extend such a duty to the unusual facts of this case, where the alleged breach of the duty is the attorney's failure to affirmatively contact and inform the court about what are essentially extrajudicial events.

While Rule 3.3 of Georgia's Rules of Professional Conduct speaks to an attorney's duty of candor to the court, we do not undertake to extend that rule beyond the scope of an attorney's conduct as an attorney. And we have found no authority supporting the imposition of criminal liability upon an attorney based solely on a breach of a rule of professional conduct. As our Supreme Court has noted, "[i]t is important to recognize . . . that behavior which might be unethical and might even

subject an attorney to discipline by the State Bar does not necessarily rise to the level of criminal conduct." *Marcus v. State*, 249 Ga. 345, 346 (290 SE2d 470) (1982). See also *Allen v. Lefkoff, Duncan, Grimes & Dermer, P. C.*, 265 Ga. 374, 375 (1) n. 3 (453 SE2d 719) (1995) (noting, in civil case for attorney malpractice, that the State Bar Rules are not "intended to provide a basis for criminal liability").

Again, these deficiencies in the state's case against Ragas cannot be rectified on remand. See *Tanks*, 292 Ga. App. at 178. It is error for us to remand for further proceedings where, as here, the evidence is legally insufficient. *Brantley*, supra at 892-893. So we reverse the judgment.

*Judgment reversed. Senior Appellate Judge Herbert E. Phipps concurs. Rickman, P. J. dissents.*

A21A0237. IN RE ARNOLD RAGAS.

RICKMAN, Presiding Judge, dissenting.

Because the appropriate course of action here is to vacate the judgment of contempt and remand the case to the trial court, I respectfully dissent.

The standard of proof in criminal contempt cases is the beyond a reasonable doubt standard. *In re Crane*, 253 Ga. 667, 669 (2) (324 SE2d 443) (1985). Here, when the trial court held Ragas in criminal contempt, the court's only statement as to the standard of proof was erroneous and there was no clarification that the correct standard was actually applied. Accordingly, we should vacate the trial court's judgment and remand the case for the trial court to apply the proper standard to the existing record. See *Mathis v. Corrugated Gear & Sprocket*, 263 Ga. 419, 421 (5) (435 SE2d 209) (1993); *Interest of A. G.*, 355 Ga. App. 771, 772 (845 SE2d 779) (2020) (physical precedent only)*; In re A.S.*, 293 Ga. App. 710, 712-713 (2) (667 SE2d 701) (2008)*.

In its zeal to usurp the trial court's role as fact finder, the majority states that it is error to remand for further proceedings. That statement is not accurate. See *Mathis*, 263 Ga. 419, 421 (5) (where the record does not indicate whether the trial court applied the beyond a reasonable doubt standard applicable to criminal contempt

cases, we must vacate the judgment of contempt and remand the case to the trial court for application of that standard); *Life For God's Stray Animals, Inc. v. New North Rockdale County Homeowners Assn.*, 256 Ga. 338, 338-339 (2) (349 SE2d 184) (1986) (same). Nor is that statement supported by the authority cited in the majority opinion. In *Brantley v. State*, 272 Ga. 892 (536 SE2d 509) (2000), the Georgia Supreme Court granted certiorari to consider whether the Court of Appeals erroneously remanded after having already determined that the State's evidence was insufficient to prove that Brantley was a convicted felon. The Supreme Court held that the remand was based "upon a failure to prove a prior guilty plea and upon the State's claim that it could cure this error," and that allowing a remand for an additional hearing on this issue would, "in effect, retry Brantley for the same crime and thereby violate the Double Jeopardy Clause of the United States Constitution." (Citation and punctuation omitted.) Id. at 893. That is not the situation here. The trial court applied the wrong standard of proof and a remand would not allow the State to retry Ragas, but would merely allow the trial court to exercise its role as fact finder and determine, under the correct standard, whether the evidence in the existing record is sufficient to find Ragas in criminal contempt. See *In re Brinson*, 299 Ga. 859, 859 (2) (791 SE2d 804) (2016) ("[I]t is for the finder of fact, not an appellate court, to

resolve conflicts in the evidence and questions of witness credibility;" in criminal contempt case, trial court was authorized to weigh the conflicting evidence on the question of willfulness) (citation and punctuation omitted); *In re Bowens*, 308 Ga. App. 241, 243 (1) (706 SE2d 694) (2011) ("[I]n a contempt hearing before a judge sitting as the trier of fact, the hearing judge, and not the appellate court, determines the credibility of witnesses.").