**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 23, 2024**

# In the Court of Appeals of Georgia

A24A1810. DAVIS v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Avery Davis on one count of possession of marijuana with intent to distribute. Davis now appeals his conviction and the denial of his motion for new trial. Specifically, Davis argues the evidence was insufficient to support his conviction and that the trial court erred in (1) denying his motion to suppress statements that he made while in custody but prior to being informed of his right to remain silent, (2) admitting evidence of other acts, and (3) refusing to instruct the jury on misdemeanor possession of marijuana as a lesser-included offense of possession with intent to distribute. But for the following reasons, we affirm Davis's conviction and the denial of his motion for new trial.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that around 9:00 p.m. on the night of April 12, 2022, a patrolling deputy with the Jeff Davis County Sheriff's Office observed a vehicle driving with one of its headlights out. And as a result, the deputy illuminated his vehicle's blue lights and initiated a traffic stop. As the deputy exited his vehicle and approached the stopped vehicle, he recognized the driver as Davis, with whom he was familiar. The deputy also observed Abigail Yarborough-Bryant—Davis's girlfriend—sitting in the front passenger seat of Davis's vehicle.

The deputy asked Davis for his license and registration, but Davis immediately admitted that his license was suspended. After confirming that Davis's license was suspended, the vehicle was registered to him, and it was not insured, the deputy asked Davis to exit his vehicle. Davis complied with this request, and as he did so, the deputy smelled the odor of burnt marijuana, while also noticing that Davis handed Yarborough-Bryant some money. When asked about the odor, Davis replied that he had just smoked some marijuana and the deputy might find a small "roach" in the vehicle if he searched it. The deputy then searched Davis's person and found a small

---

[1] *See, e.g.*, *Cawthon v. State*, 350 Ga. App. 741, 741 (830 SE2d 270) (2019).

bag that appeared to contain a tiny amount of marijuana, after which he placed Davis in the backseat of his patrol vehicle.

The deputy then turned his attention to Yarborough-Bryant and asked her if he would find anything if he searched her. Immediately, Yarborough-Bryant exited the vehicle and handed the deputy a large bag, which contained several smaller bags of marijuana and a set of scales. Based on the drugs he found, the deputy called a drug investigator from the sheriff's office to take over the investigation. And while waiting for the investigator and another deputy to transport Yarborough-Bryant, the deputy returned to his patrol vehicle, at which point Davis proclaimed that all of the marijuana belonged to him. A short time later, as Davis and Yarborough-Bryant were being escorted to the local detention center (having been transported there separately), Davis assured his girlfriend "[D]on't worry baby, I'm going to take it all. I'm going to say it's all mine."

Thereafter, the State charged Davis and Yarborough-Bryant, via the same indictment, with one count of possession of marijuana with intent to distribute. And a short time later, Davis filed a motion to suppress the statements that he made while in custody, arguing he was improperly questioned without being informed of his right

to remain silent. A few weeks before trial, the trial court conducted a hearing on the motion, in which the deputy who initiated the traffic stop testified. At the conclusion of the hearing, the trial court denied Davis's motion, finding that the statements he made—while admittedly in custody—were spontaneous and not the result of interrogation. And on the same day as the suppression hearing, the State filed a notice of its intent to introduce two of Davis's prior drug convictions into evidence, which—following a response brief from Davis—the trial court granted a week before trial.

The case against Davis only then proceeded to trial, during which the State presented the foregoing evidence, as well as Davis's prior convictions for the sale of cocaine and the sale of marijuana. Additionally, the State called the investigator who took over the case from the deputy. After being qualified as an expert in the area of drug investigations, he confirmed the deputy had recovered three bags of marijuana (totaling 50.31 grams) and a set of scales. The investigator also testified that a person possessing marijuana solely for personal use would usually only have 4 or 5 grams, and he further opined that based on the amount seized, the scales, and the separate bags, Davis intended to distribute the marijuana in his possession. In further support of its

case, the State called a GBI forensic chemist, who explained that tests on the substance in the three bags recovered at the scene confirmed it as marijuana.

Davis did not testify in his own defense, but Yarborough-Bryant testified on his behalf. Specifically, she claimed the marijuana in Davis's vehicle was hers, that it was solely for her personal use, and that the scales were to ensure she was not cheated when purchasing the drugs. On cross-examination, Yarborough-Bryant acknowledged that she had pleaded guilty the previous day to a charge of possession of more than one ounce of marijuana, rather than possession with intent to distribute as originally charged. Nevertheless, at the conclusion of the trial, the jury found Davis guilty of possession of marijuana with intent to distribute.

Shortly after his conviction, Davis filed a motion for new trial and later an amended motion in that regard. The trial court held a hearing on the matter but refrained from issuing a ruling at the conclusion of the hearing in order to allow the State to file a response. And one week after the State filed its response, the trial court denied Davis's motion for new trial. This appeal follows.

1. Davis contends the evidence was insufficient to support his conviction. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] And in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn to Davis's specific challenges to the sufficiency of the evidence supporting his conviction.

OCGA § 16-13-30 (j) (1) provides that "[i]t shall be unlawful for any person to possess . . . with intent to distribute marijuana." As a result, to support a conviction

---

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

for this offense, the State "must prove more than mere possession or intent for personal use."[5] Indeed as the text of the statute plainly implies, the evidence "must show an intent to distribute."[6] Of course, there is no bright-line rule "regarding the amount or type of evidence sufficient to support a conviction for possession with intent to distribute."[7] And significantly, when a conviction hinges on circumstantial evidence, the evidence "must exclude every reasonable hypothesis except guilt."[8] Even so, the State may demonstrate such intent

> in a number of ways, including the packaging of the contraband, possession of certain amounts or denominations of currency, a prior possession with intent to distribute conviction, and expert testimony that the amount of contraband possessed was consistent with larger amounts usually held for sale rather than for personal use.[9]

---

[5] *Patel v. State*, 351 Ga. App. 580, 581 (831 SE2d 513) (2019) (punctuation omitted); *accord Jackson v. State*, 314 Ga. App. 272, 275 (1) (c) (724 SE2d 9) (2012).

[6] *Patel*, 351 Ga. App. at 581 (punctuation omitted); *accord Jackson*, 314 Ga. App. at 275 (1) (c).

[7] *Cooper v. State*, 315 Ga. App. 773, 775 (2) (728 SE2d 289) (2012) (punctuation omitted); *accord Benton v. State*, 356 Ga. App. 441, 442 (1) (a) (847 SE2d 625) (2020).

[8] *Patel*, 351 Ga. App. at 581-82 (punctuation omitted); *accord Hicks v. State*, 293 Ga. App. 830, 832 (668 SE2d 474) (2008).

[9] *Boring v. State*, 303 Ga. App. 576, 578-79 (1) (694 SE2d 157) (2010) (punctuation omitted); *see Patel*, 351 Ga. App. at 582 (explaining that "if no additional

In summary, there must be "competent evidence linking the possession of the drugs to the enterprise of sale."[10]

Here, the State presented evidence that Davis was at least in joint possession of 50.31 grams (approximately 1.77 ounces[11]) of marijuana, which was packaged in at least three smaller bags. In fact, at the scene of the traffic stop and a short time later at the detention center, Davis made statements claiming ownership of the marijuana.[12]

evidence of intent to distribute is offered, such as scales, drug paraphernalia, large amounts of cash, division of drugs into individual packages, or a prior conviction of possession with intent to distribute, expert testimony is critical, and the conviction cannot be sustained without it" (punctuation omitted)).

[10] *Patel*, 351 Ga. App. at 582 (punctuation omitted).

[11] According to the National Institute of Standards and Technology, one avoirdupois ounce is precisely 28.349523125 grams. *See* Specifications, Tolerances, and Other Technical Requirements for Weighing and Measuring Devices, National Institute of Standards and Technology, Handbook No. 44, Appendix C at 12 (2010); *see also* OCGA § 10-2-2 ("The definitions of basic units of weight and measure, the tables of weight and measure, and weights and measures equivalents as published by the National Bureau of Standards [now the National Institute of Standards and Technology] are recognized and shall govern weighing and measuring equipment and transactions in the State of Georgia.").

[12] *See Jackson*, 314 Ga. App. at 274 (1) (a) (explaining that under Georgia law, the owner of an automobile is presumed to be in possession and control of any contraband found in the automobile, and although this presumption is rebuttable by evidence of equal access to the contraband by others, that rule has no application when all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that contraband). Davis challenges the admission of

And although no large amount of cash was recovered, the large bag containing the smaller bags of marijuana also included a set of scales. In addition, the State presented evidence that Davis had twice been convicted of selling controlled substances. Finally, the investigator with the sheriff's office testified as an expert and opined that, given all the circumstances, Davis possessed the marijuana with the intent to distribute it rather than for personal use. Consequently, the evidence was sufficient to support Davis's conviction.[13]

---

these statements, *infra*, "but we consider even erroneously admitted evidence in determining sufficiency[.]" *Baker v. State*, 319 Ga. 456, 461 (1) (902 SE2d 645) (2024) (punctuation omitted). Regardless, as discussed below, we ultimately reject his argument that his statements were improperly admitted.

[13] *See Patel*, 351 Ga. App. at 582-83 (holding that evidence defendant possessed nearly one pound of marijuana and testimony from law-enforcement officer that such amount was not consistent with personal use was sufficient to support defendant's conviction of possession with intent to distribute); *Flemister v. State*, 317 Ga. App. 749, 752-53 (1) (732 SE2d 810) (2012) (holding that there was sufficient evidence to support a conviction for possession of marijuana with intent to distribute when the drugs were packaged into separate baggies, and lieutenant testified that, based on his training and experience, the baggies were the type commonly used for packaging marijuana for distribution); *Cooper*, 315 Ga. App. at 775-76 (2) (affirming defendant's conviction of possession with intent to distribute given evidence of defendant using scale to distribute marijuana into individual packages of similar weight, his possession of a larger bag of marijuana along with empty individual plastic bags, and his possession of a total amount of 6.85 grams of loose marijuana); *Boring*, 303 Ga. App. at 579 (1) (holding that packaging and amount of marijuana, digital scales, and testimony from deputy that such indicated defendant was selling the marijuana was

2. Davis also contends the trial court erred in denying his motion to suppress statements that he made while in custody but prior to being informed of his right to remain silent. Again, we disagree.

When a trial court rules upon the admissibility of a defendant's custodial statement following a *Jackson-Denno*[14] hearing, as the trial court did below, it must determine whether, "based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily."[15] And when the facts material to a motion to suppress are disputed, it "generally is for the trial judge to resolve those disputes and determine the material facts"[16] In this

---

sufficient to support conviction of possession with intent to distribute).

[14] *See Jackson v. Denno*, 378 U.S. 368, 380 (III) (84 SCt 1774, 12 LE2d 908) (1964) (holding that a defendant objecting to admission of statements he or she made to law enforcement while in custody is entitled to fair hearing in which both underlying factual issues and voluntariness of confession are actually and reliably determined).

[15] *Bell v. State*, 284 Ga. 790, 794 (2) (671 SE2d 815) (2009) (punctuation omitted); *accord Gunn v. State*, 342 Ga. App. 615, 622 (2) (804 SE2d 118) (2017); *see Thomas v. State*, 292 Ga. 429, 433 (3) (738 SE2d 571) (2013) (explaining that the trial court determines the admissibility of defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances).

[16] *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015); *accord Pena v. State*, 297 Ga. 418, 421 (3) (774 SE2d 652 (2017).

regard, our Supreme Court has identified three corollaries of this principle, which "limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts"[17] First, appellate courts generally must "accept those findings unless they are clearly erroneous."[18] Second, we must construe the evidentiary record "in the light most favorable to the factual findings and judgment of the trial court."[19] And third, we generally must limit our consideration of the disputed facts to "those expressly found by the trial court."[20]

In his motion to suppress, and now on appeal, Davis argues that because he was in custody—*i.e.*, sitting in the backseat of the deputy's patrol vehicle and just outside the detention center—when he made the statements asserting ownership of the marijuana, the statements were inadmissible because he had not yet been read his

---

[17] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

[18] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

[19] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

[20] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

*Miranda*[21] rights. But although Davis was indeed in custody and had not been read his *Miranda* rights when he made his statements, he is nonetheless incorrect. As the Supreme Court of Georgia has explained, *Miranda* warnings "must be administered when the accused is in custody and is subjected to interrogation or its functional equivalent, but a spontaneous and unsolicited statement is admissible without *Miranda* warnings if it was not elicited by questioning or made in response to any form of custodial interrogation."[22] Furthermore, the question of whether a statement was "made in response to interrogation or was volunteered is a question of fact, and the trial court's resolution of this issue will be upheld unless it is clearly erroneous."[23]

Here, the deputy's unrebutted testimony at the motion-to-suppress hearing revealed that he did not ask Davis anything to elicit a response about who owned the

---

[21] *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (86 SCt. 1602, 16 LE2d 694) (1966) (holding that the Fifth Amendment bars the admission of an accused's statements made during a custodial interrogation unless he first is advised of and voluntarily waives his right to remain silent and not incriminate himself); *see also* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself. . . ."); Ga. Const. Art. I, Sec. I, Par. XVI ("No person shall be compelled to give testimony tending in any manner to be self-incriminating.").

[22] *Doricien v. State*, 310 Ga. 652, 655 (2) (853 SE2d 120) (2020) (punctuation omitted); *accord Johnson v. State*, 301 Ga. 707, 711 (III) (804 SE2d 38) (2017).

[23] *Menzies v. State*, 304 Ga. 156, 164 (IV) (816 SE2d 638) (2018).

marijuana recovered minutes earlier from Yarborough-Bryant. Instead, when the deputy returned to his patrol after recovering the contraband, Davis—entirely unprompted—proclaimed "that's all my shit." Then, when he and Yarborough-Bryant were entering the detention center, again unprompted, Davis told his girlfriend, "[D]on't worry baby, I'm going to take it all. I'm going to say it's all mine." Suffice it to say, the deputy was "under no obligation to stop listening to the spontaneous statements that [Davis] chose to make, and, because the statements were not elicited by interrogation, they were properly admissible at [Davis's] trial."[24] Moreover, although difficult to discern from his appellate brief, to the extent Davis argues the deputy's initial questions immediately after initiating the traffic stop amounted to a custodial interrogation requiring a reading of his *Miranda* rights, he is again mistaken. As we have previously held, initial inquiries upon arriving on the scene, including requests for identification, do not amount to a custodial interrogation

---

[24] *Doricien*, 310 Ga. at 656 (2); *see Menzies*, 304 Ga. at 163-64 (IV) (holding defendant's spontaneous incriminating statement, which was made while defendant sat alone in police interview room, was not rendered inadmissible by the fact that she had not yet been advised of her *Miranda* rights, as no law enforcement officer was present, much less interrogating her); *Hernandez v. State*, 299 Ga. 796, 800 (3) (792 SE2d 373) (2016) ("The incriminating statement at issue was volunteered rather than elicited by interrogation, and thus it was properly admitted at trial.").

requiring the administration of *Miranda* warnings.[25] Accordingly, the trial court did not err in denying Davis's motion to suppress.

3. Davis also maintains the trial court erred in admitting evidence of his two previous convictions for selling drugs, primarily arguing that because those convictions were quite temporally remote, their probative value was substantially outweighed by their prejudicial effect. Once again, we disagree.

Rule 404 (b), codified at OCGA § 24-4-404 (b), provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .[26]

---

[25] *See Wilson v. State*, 325 Ga. App. 859, 862 (2) (755 SE2d 252) (2014) (explaining officer's question as to "what was going on" did not amount to custodial interrogation); *Jones v. State*, 258 Ga. App. 229, 230 (573 SE2d 470) (2002) (holding neither the officer's inquiry upon arriving on the scene as to "what was going on" nor his request for identification amounted to a "custodial interrogation" requiring administration of Miranda warnings).

[26] *See also Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016) (quoting OCGA § 24-4-404 (b)).

And the Supreme Court of Georgia has adopted a three-part test by which we are to evaluate the admissibility of so-called "other acts" evidence: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[27] As to the first factor, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[28] As to the second factor, even if Rule 404 (b) evidence is relevant, we must still decide whether "the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403."[29] Importantly,

[27] *Id.* (punctuation omitted) (quoting *United States v. Ellisor*, 522 F3d 1255, 1267 (II) (A) (11th Cir. 2008)).

[28] OCGA § 24-4-401; *accord Smart*, 299 Ga. at 418 (2) (a).

[29] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted); *accord State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015); *see also* OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 96 (5th ed. 2016) ("Under Rule 403, the term 'unfair prejudice' speaks

application of the Rule 403 balancing test is "a matter committed principally to the discretion of the trial courts," but as we have explained before, "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly."[30] Indeed, this Court reviews the admission of Rule 404 (b) evidence "for a clear abuse of discretion," a deferential review requiring us to make "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[31]

---

to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. The prejudice referenced in Rule 403 addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." (footnote omitted)).

[30] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted); *accord Jernigan v. State*, 357 Ga. App. 415, 423 (2) (a) (ii) (848 SE2d 707) (2020) *Morris v. State*, 340 Ga. App. 295, 306 (4) (797 SE2d 207) (2017).

[31] *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016) (punctuation omitted); *accord Morris*, 340 Ga. App. at 306-07 (4); *Graham v. State*, 337 Ga. App. 664, 669 (2) (788 SE2d 555) (2016); *see* CARLSON, *supra* note 29, p. 130 ("Evaluating the balance between probativity and prejudice under Rule 403 calls for a commonsense assessment of all the circumstances surrounding the other act, including [the] proponent's need for the [Rule 404 (b)] evidence, the overall similarity between the extrinsic evidence and the offense at issue, and the temporal proximity of the two.").

Turning to Davis's specific claim, a few weeks before trial, the State filed a notice of its intent to introduce his two prior convictions into evidence for the purpose of proving intent, which the trial court granted shortly before trial. And just prior to the introduction of the evidence, the trial court provided the jury with a limiting instruction, explaining that the State was offering evidence of the two prior convictions solely to the extent it could be considered in determining Davis's intent to commit the offense being tried. Thereafter, a law-enforcement officer testified regarding Davis's 2006 arrest and conviction for selling cocaine, and another officer testified regarding Davis's 2010 arrest and conviction for selling marijuana. The State also submitted certified documentation of both convictions into evidence. And later, the trial court repeated its earlier limiting instruction in its charges to the jury.

Davis does not dispute committing the earlier offenses, but nevertheless argues the trial court erred in admitting this evidence. Specifically, Davis claims that because even the most recent conviction occurred more than ten years prior, the prejudicial effect of the evidence far outweighed its probative value. But the Supreme Court of Georgia recently explained that "as to intent, a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element

to be proved by the State."[32] Of course, here, Davis pleaded not guilty to the charge. And although, given Yarborough-Bryant's testimony, his defense was seemingly that the marijuana was not his but hers, we have held that unequivocally denying any involvement in a charged crime does not remove the element of intent from a case.[33] Furthermore, the two prior convictions were quite similar to the charge for which he was being tried in that all three required the State to prove not only possession of

[32] *Jernigan*, 357 Ga. App. at 421 (2) (a) (i) (punctuation omitted); *see Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016) ("[B]ecause a plea of not guilty puts the prosecution to its burden of proving every element of the crime—including intent—evidence of other acts that tends to make the requisite intent more or less probable to any extent is relevant.").

[33] *See Jernigan*, 357 Ga. App. at 421 (2) (a) (i) (explaining that while defendant argues that his denial of any participation in the charged crime removed the element of intent from the case, relying on the Eleventh Circuit and applying our current Evidence code, we have already considered and rejected that argument ); *Silvey v. State*, 335 Ga. App. 383, 387 (1) (a) (780 SE2d 708) (2015) (physical precedent only as to Divisions 2 (a) and 3 (b) (ii)) (same); *United States v. Nahoom*, 791 F2d 841, 845 (II) (11th Cir. 1986) (rejecting argument that denial of involvement in crime removes issue of intent from the case when defendant pleaded not guilty); *United States v. Holman*, 680 F2d 1340, 1349 (II) (B) (11th Cir. 1982) (holding that unequivocal denials of participation in the crime along with representations that defendant would not actively dispute the existence of intent were insufficient to remove the issue of intent from the case). Importantly, when Georgia appellate courts have considered the meaning of Rule 404 (b), we "consistently have looked for guidance in the decisions of the federal appellate courts construing and applying Federal Rule of Evidence 404 (b)." *Olds*, 299 Ga. at 69 (2) (punctuation omitted).

illegal drugs but an intent to do so for reasons other than personal use.[34] And indeed, evidence of prior drug activity is "highly probative of intent to sell a controlled substance."[35]

As to Davis's assertion that the probative value of the evidence was substantially outweighed by its prejudicial effect, we are not persuaded. Although Davis claimed ownership of the marijuana at the scene of the traffic stop and while entering the detention center, at trial—given Yarborough-Bryant's testimony—his defense clearly shifted to denying possession. And even without this more recent

---

[34] *See* OCGA § 16-13-30 (b) ("Except as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance."); OCGA § 16-13-30 (j) (1) ("It shall be unlawful for any person to possess, have under his or her control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana.").

[35] *Moton v. State*, 351 Ga. App. 789, 793 (833 SE2d 171) (2019); *see Waktins v. State*, 353 Ga. App. 606, 611 (2) (a) (i) (839 SE2d 41) (2020) (holding defendant's prior drug convictions admissible to show intent to possess marijuana); *Burgess v. State*, 349 Ga. App. 635, 640-41 (3) (824 SE2d 99) (2019) (concluding defendant's previous conviction for possession of cocaine with intent to distribute was admissible to show intent in trial for the same offense), *overruled in part on other grounds in Hill v. State*, 360 Ga. App. 143 (860 SE2d 893) (2021); *United States v. Williams*, 161 Fed Appx. 842, 845 (III) (B) (11th Cir. 2006) ("Evidence of prior drug dealings is highly probative of intent in later charges of conspiracy to distribute a controlled substance, and it is immaterial that the type of drug in the extrinsic evidence is different from the type of drug at issue in the conspiracy charge.").

denial of possession, the State was still tasked with proving that Davis intended to distribute the marijuana. Consequently, the State had a compelling need for the extrinsic acts evidence of intent.[36] Furthermore, although the most recent conviction was nearly ten years before the arrest, Davis received a sentence of five years to serve for that conviction, and as our Supreme Court has explained "the prior crime need not be very recent, especially [when] a substantial portion of the gap in time occurred while the defendant was incarcerated."[37] Finally, the trial court gave limiting instructions regarding the other acts, both before their admission and during the

---

[36] *See Sloan v. State*, 360 Ga. App. 256, 261 (2) (861 SE2d 130) (2021) (explaining in trafficking cocaine case the prosecutorial need for the evidence of previous drug convictions to show intent was heightened given defendant's claim he was merely present at scene where cocaine was found); *Watkins*, 353 Ga. App. at 611-12 (2) (a) (ii) (holding State had a compelling need for extrinsic acts evidence of intent in light of fact defendant denied possession of drugs and only circumstantial evidence linked him to same).

[37] *Castillo-Velasquez v. State*, 305 Ga. 644, 649 (2) (827 SE2d 257) (2019) (punctuation omitted); *see Kirby v. State*, 304 Ga. 472, 484 (4) (a) (i) (819 SE2d 468) (2018) (holding that, "although more than 11 years passed between the 1990 crimes and [the instant] murder in 2002, the prior acts were not so remote as to be lacking in evidentiary value" when it was likely that he was incarcerated for a significant portion of the intervening years); *Jones v. State*, 301 Ga. 544, 548 (2) (802 SE2d 234) (2017) (noting that a temporal span of six years was not too remote to impact the probative value of an extrinsic act in any significant way).

general jury charge, thus reducing any risk of unfair prejudice.[38] Given these

circumstances, the trial court did not abuse its discretion in finding the probative value

of Davis's two prior drug-related convictions was not substantially outweighed by

their prejudicial effect and, therefore, admitting them into evidence.

4. Davis further claims the trial court erred in refusing to instruct the jury on

misdemeanor possession of marijuana as a lesser-included offense of possession with

intent to distribute. Yet again, we disagree.

It is well established that for a requested jury instruction to be warranted, it

must be "legal, apt, and precisely adjusted to some principle involved in the case."[39]

And to authorize a jury instruction on a lesser included offense, there "must be some

evidence in the record that the defendant committed that offense."[40] But when the

evidence "shows either the commission of the greater offense as charged or the

---

[38] *See Watkins*, 353 Ga. App. at 612 (2) (a) (ii) (explaining that the trial court's limiting instructions as to Rule 404 evidence reduced the risk of any unfair prejudice); *Moton*, 351 Ga. App. 793-94 (same).

[39] *Harrison v. State*, 310 Ga. 862, 866 (2) (855 SE2d 546) (2021) (punctuation omitted); *accord Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015).

[40] *Walker v. State*, 311 Ga. 719, 722 (2) (859 SE2d 25) (2021) (punctuation omitted); *accord Stepp-McCommons v. State*, 309 Ga. 400, 403 (2) (845 SE2d 643) (2020).

commission of no crime at all, an instruction on a lesser-included offense is not required."[41] And significantly, whether the evidence "was sufficient to warrant the requested instruction is a legal question, which we review de novo."[42]

In this matter, Davis filed written requests for jury instructions, which included a request for the trial court to charge the jury on misdemeanor possession of one ounce or less of marijuana as a lesser-included offense of possession with intent to distribute. And during the charge conference, Davis repeated this request. Specifically, Davis argued that the amount of suspected marijuana found on his person was certainly less than one ounce and that the GBI chemist only tested 31.235 grams (approximately 1.1 ounce[43]) out of the 50.31 grams recovered from his vehicle to confirm that the contraband was, in fact, marijuana. The State countered that there was no evidence Davis possessed one ounce or less of marijuana to warrant the misdemeanor instruction, and the trial court ultimately agreed. But the trial court added that it would instruct the jury that it could not consider the suspected marijuana

---

[41] *Walker*, 311 Ga. at 722 (2); *accord Stepp-McCommons*, 309 Ga. at 403 (2).

[42] *Walker*, 311 Ga. at 722 (2) (punctuation omitted); *accord Stepp-McCommons*, 309 Ga. at 403 (2).

[43] *See supra* note 11 & accompanying text.

22

found in the search on Davis's person, as that substance was never tested. Thereafter, following closing arguments by the parties, the trial court charged the jury as outlined during the charge conference, instructing on the law of possession of marijuana with intent to distribute with the caveat that any conviction could not be based on the suspected marijuana found on Davis's person, as it was never tested. Davis subsequently reasserted his objection.

In considering Davis's argument, we first look to the relevant statutes defining the offenses. As previously noted, OCGA § 16-13-30 (j) (1) provides that "[i]t shall be unlawful for any person to possess . . . with intent to distribute marijuana." And OCGA § 16-13-2 (b) notes that "any person who is charged with possession of marijuana, which possession is of one ounce or less, shall be guilty of a misdemeanor . . . ." But here, contrary to Davis's argument, there was no evidence that he possessed only the one ounce or less of marijuana required for a finding that he was guilty of misdemeanor possession under OCGA § 16-13-2 (b). Rather, the evidence presented by the State—even if one only considered the amount tested by the GBI chemist rather than the entire amount recovered—showed that Davis possessed more than one ounce. Furthermore, Davis's defense at trial, given Yarborough-Bryant's

23

testimony, was that he did not own *any* of the marijuana recovered from his vehicle. Accordingly, the trial court did not err in refusing to charge the jury on the lesser-included offense of misdemeanor possession of marijuana.[44]

For all these reasons, we affirm Davis's conviction and the denial of his motion for new trial.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

[44] *See Scott v. State*, 297 Ga. App. 649, 650 (678 SE2d 124) (2009) (holding evidence did not warrant instruction for misdemeanor possession of marijuana as lesser included offense of possession of marijuana with intent to distribute given the fact that defendant possessed much more than one ounce of marijuana and that defendant testified he did not possess any whatsoever); *Rimmer v. State*, 197 Ga. App. 294, 296 (3) (398 SE2d 282) (1990) (concluding trial court did not err in denying defendant's request to charge the jury on the lesser included misdemeanor offense of possession of less than one ounce of marijuana because State presented evidence defendant was guilty of possession, at least jointly, of all four bags of marijuana found in house and defendant claimed that he possessed none of it); *see also Stepp-McCommons*, 309 Ga. at 403 (2) (explaining when "the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense." (punctuation omitted)).